NASHVILLE MOBILPHONE CO., INC.,
Plaintiff-Appellant,

v.

Jayne Ann WOODS, Commissioner,
Tennessee Department of Revenue,
Defendant-Appellee.

MELROSE ELECTRONICS, INC.,
Plaintiff-Appellant,

v.

Jayne Ann WOODS, Commissioner,
Tennessee Department of Revenue,
Defendant-Appellee.

Supreme Court of Tennessee.

Aug. 15, 1983.

Clarence Evans, Winston S. Evans, Nashville, for plaintiffs-appellants.

Jimmy G. Creecy, Deputy Atty. Gen., Gregory L. Nelson, Asst. Atty. Gen., Nashville (William M. Leech, Jr., Atty. Gen., Nashville, of counsel), for defendant-appellee.

OPINION

HARBISON, Justice.

In these consolidated cases the taxpayers sought a refund of sales and use taxes paid

under protest. The trial judge dismissed the actions, and taxpayers have appealed. Review is sought as to only two of the items in dispute in the trial court.

Nashville Mobilphone Company, Inc., is a radio common carrier as defined in T.C.A. §§ 65–30–101 to –112. It holds certificates of convenience and necessity authorizing it to provide commercial radio and communication services in Nashville and the Middle Tennessee area. It maintains and operates radio receiving and transmitting equipment at its various base locations. It transmits and receives to and from its customers radio signals consisting of voice signals whereby two-way voice communication with the customers is provided and also one-way signals which are transmitted to the customer through a paging or signalling device. It interconnects with the Bell telephone system. Through this arrangement persons having a radio phone unit may establish two-way communication with any conventional telephone set in the Bell network. Likewise any person calling through the Bell telephone system may establish communication with any Mobilphone customer having a radio phone set.

The applicable statute contains the following definition:

"'Radio common carrier system' shall mean any facility within this state which is operated to perform for hire the service of radio communications to members of the public who subscribe to such service; and the word 'facility' as used in this subsection shall include all real property, stations, antennae, radios, receivers, transmitters, instruments, appliances, fixtures and other personal property used by a radio common carrier in providing service to its subscribers." T.C.A. § 65–30–103(3).

Appellant received its charter in 1965 authorizing it to operate as a radio common carrier for hire and to operate as a domestic public land mobile radio service. The amounts which it is permitted to charge its subscribers are fixed in tariffs approved by the Tennessee Public Service Commission. One of the early tariffs, effective September 7, 1966, was filed as an exhibit together with certain revisions and supplements effective in 1973 and 1975.

In connection with providing service to its subscribers, appellant also leases or rents to them various types of radio telephone and signalling devices. The approved tariff authorizes appellant to make specified charges to a subscriber for services and also scheduled charges for the rental, use and maintenance of equipment. Title to the equipment at all times remains with appellant, and the customer agrees to indemnify appellant against loss through breakage, misuse, theft and the like. Appellant requires customers who use its equipment to pay a regular periodic charge for maintenance.

In order to obtain service from appellant, a subscriber does not have to use radio phone or signalling equipment furnished by appellant. The subscriber may furnish his own equipment and still receive service. The converse, however, is not true. That is, a customer may not rent equipment from appellant without also subscribing to the service furnished by appellant. Appellant, therefore, is not in the general business of renting radio phone or signalling equipment for general use by the public. It only rents or leases this equipment to its own subscribers who, in every instance, also utilize its service as a radio common carrier.

Under the provisions of T.C.A. § 67–3002(c)(4)(C) the services rendered by appellant to its subscribers fall within the definition of a "retail sale" and are subject to the "Retailers' Sales Tax Act." In defining the term "retail sale" the statute includes:

"The furnishing of telephone service to regular subscribers, such service embracing local (flat charge or metered) calls, long-distance calls, leased lines or equipment for the vocal or written transmission of messages, as well as any additional or incidental services for which a charge is made; and the transmission for

a consideration of messages by telegraph . . . ."

Appellant raises no issue as to the taxability of its services to its subscribers. It has always collected from its subscribers and remitted to the Department of Revenue a sales tax on the charges which it makes to its customers.

■ It is the insistence of appellant, however, that its purchases of radio phone and signalling equipment which it leases to its subscribers are exempt as "sales for resale," and that those purchases are not subject to the sales or use tax. The Commissioner disagreed, and during an audit covering the period 1973 through 1975 a deficiency was assessed upon the purchase price paid by appellant to its vendors, resulting in the principal item in dispute between the parties.

It is the insistence of appellant that both through the tariff under which it is authorized to make charges and in its contracts with its subscribers, rental and maintenance charges for equipment furnished are separately shown and itemized. Since the rental of tangible personal property is made equivalent to a sale under the applicable statutes, appellant insists that it is engaged in the purchasing of radio equipment for resale, insofar as it leases equipment to its subscribers. It concedes that its base terminal facilities and transmitters are used by it, as the ultimate consumer, and it claims no exemption with respect to them. It is the insistence of appellant that it would be subject to impermissible or unauthorized double taxation if it were required to pay a sales or use tax upon the purchase of that equipment which it leases to customers.

On the other hand, the Commissioner insists that appellant is the ultimate user or consumer of its facilities, and its supplying these facilities to customers for rental and maintenance charges is merely incidental or secondary to its primary chartered purpose of providing services as a radio common

carrier. While such rental and maintenance charges comprise nearly half of the total amounts charged by appellant to its customers, nevertheless the Commissioner insists that appellant is not engaged in the general rental business but in furnishing services as a "radio common carrier system" under T.C.A. § 65–30–103(3) and that its "facilities" include the receivers, signalling devices and other personal property supplied to its customers.

The trial judge sustained the contention of the Commissioner, and we are of the opinion that his decision is supported by the weight of authority. There are no cases from this jurisdiction precisely on point, but the majority of cases from other states which have considered similar problems have held that an enterprise like that conducted by appellant is not engaged in sales for resale, but simply in the furnishing of equipment as a part of and as a means of delivering its principal service.

The case most closely in point is *American Video Corp. v. Lewis,* 389 So.2d 1059 (Fla.App.1980). The taxpayer there was a provider of cable television service in Broward County. In connection with furnishing that service, it supplied items of personal property consisting of hooks, cables, transformers, rods, and other items which it purchased for rental to its various customers or subscribers. Admittedly the charges which it made to its customers were taxable, but the taxpayer insisted that in renting equipment to its customers it was engaged in a resale so that its initial purchase of those items from its suppliers was not a taxable transaction. Like the taxpayer in the present case, American Video Corporation insisted that it retained title to the rented items; charged a deposit by the customer, refundable upon return of the item; required the customer to pay for replacement of items which were stolen, lost or damaged; and allocated a portion of the monthly service charge paid by the customer for the use and possession of these items.

Unlike the taxpayer in the present case, American Video Corp. did not make a sepa-

rate monthly billing to its customers specifying a rental charge, but that circumstance was not deemed controlling.

Both the taxing authorities and the Florida Court of Appeals denied the exemption and held that the taxpayer's purchases of equipment from its suppliers were taxable even though the equipment was later rented to customers. The Court said:

"In our resolution of the controversy we are primarily influenced by the simple fact that these hooks, ferrules, wires and gadgets are unused, unusable and of no value in and of themselves to the customer, so as to support payment of a separate consideration for their possession, until such time as appellant makes the proper connections to its system so that the customer can watch cable T.V. For this, and nothing else, the customer pays a consideration in the form of his monthly service charge, the only charge made, except for the initial hook-up and equipment deposit." 389 So.2d at 1061.

We find this reasoning persuasive. As previously stated, appellant does not rent radio phone or signalling equipment to the general public, but only to its subscribers. While a subscriber may furnish its own equipment and still obtain the service,[1] it may not rent appellant's equipment without subscribing to the service. Appellant's equipment in the hands of the customer is completely without value to the customer except in connection with and as a part of the service for which the customer subscribes. The ultimate user or consumer of the equipment, therefore, is the appellant, utilizing the equipment as a part of its own "radio common carrier system," and there is no sale for resale within the meaning of the statutes.

The trial judge relied upon and cited numerous other cases involving sales of equipment to hotels, airlines, bowling alleys and the like, where all or part of such equipment was later leased or rented to customers in exchange for charges, some of them involving maintenance fees. In the great majority of these cases purchases of such equipment were held to be taxable, as not constituting sales for resale, even though use of the facilities or equipment was later made by customers who paid therefor. See, e.g., Atlanta Americana Motor Hotel Corp. v. Undercofler, 222 Ga. 295, 149 S.E.2d 691 (1966); Boise Bowling Center v. State, 93 Idaho 367, 461 P.2d 262 (1969); Sta-ru Corp. v. Mahin, 64 Ill.2d 330, 1 Ill.Dec. 67, 356 N.E.2d 67 (1976); Kentucky Board of Tax Appeals v. Brown Hotel Co., 528 S.W.2d 715 (Ky.1975); Sine v. State Tax Commission, 15 Utah 2d 214, 390 P.2d 130 (1964).

■ The general theme of all of these cases is that when the primary function and purpose of the taxpayer is to provide services, the ownership, use and maintenance of certain types of personal property and equipment are necessary in order to enable it to furnish the services, so that the taxpayer, not its customer, is the ultimate user or consumer within the meaning of sales and use tax statutes. The only authorities to the contrary cited by appellant deal with the sale of meals by universities or airlines to students or passengers, and even in this area there is disagreement among the cases.[2]

■ A second issue presented for review is raised by a separate taxpayer, Melrose Electronic, Inc. This corporation is not a subsidiary of Nashville Mobilphone Company, Inc., according to the record, but is a

[1] At least in the early tariff filed in evidence, if a subscriber furnished its own equipment, it was subject to approval by appellant, and the subscriber had to agree not to allow anyone to "service or adjust" the equipment except those whose "technical qualifications" were approved by appellant.

[2] That the sales of such meals are for resale, see State v. Hertz Skycenter, Inc., 55 Ala.App. 481, 317 So.2d 319 (1975); Slater Corp. v. South Carolina Tax Comm'n, 270 S.C. 405, 242 S.E.2d 439 (1978); for a holding to the contrary, see American Airlines, Inc. v. Dept. of Revenue, 58 Ill.2d 251, 319 N.E.2d 28 (1974).

related corporation, having common officers and stockholders and sharing common facilities. It is generally in the business of maintenance and repair of radio equipment for various customers, many of which have no relation to Nashville Mobilphone Company, Inc. Insofar as pertinent to the present case, however, Melrose Electronics, Inc., had an arrangement with Nashville Mobilphone Company, Inc., under which it undertook to perform the repair and maintenance work on equipment leased or rented to subscribers and customers of Nashville Mobilphone. If a formal contract between these companies exists, it was not filed as a part of the record. According to the testimony, however, Nashville Mobilphone Company, Inc., in effect, subcontracted or "farmed out" its maintenance obligations to its customers to Melrose Electronics, Inc., for a price somewhat less than Nashville Mobilphone Company, Inc., received from its customers.

Nashville Mobilphone Company, Inc., had collected and remitted to the Department of Revenue a sales or use tax on the charges which it made to its customers for repair and maintenance. It is insisted, however, that the transactions between it and Melrose Electronics, Inc., are tax-exempt, again on the theory that this is a sale for resale. In other words it is contended that Melrose Electronics, Inc., actually supplies the services which Nashville Mobilphone Company, Inc., was obligated to furnish to its customers. Each month the latter collects from its customers a fixed fee, a portion of which it remits to Melrose Electronics, Inc., whether the latter performs any services or not. In consideration for this arrangement Melrose Electronics, Inc., is obligated to perform any necessary maintenance and repair on the equipment in the hands of the customer whether the actual cost of this does or does not exceed the periodic service charge.

The trial judge dismissed the action of Melrose Electronics, Inc., and we affirm. This company is primarily engaged in the business of furnishing repair services, and the furnishing of those services is taxable as a retail sale. T.C.A. § 67–3002(c)(4)(D). The equipment which Melrose Electronics repairs is that of Nashville Mobilphone Company, Inc., which we have already held to be the primary user or consumer of that equipment. It is not furnishing repair services to Nashville Mobilphone Company, Inc. for purposes of resale, and its charges to its affiliated corporation are therefore taxable as contended by the Commissioner.

The judgment of the trial judge is affirmed at the cost of appellant. The cause will be remanded to the trial court for collection of costs accrued there and for any other orders or proceedings which may be necessary.

FONES, C.J., BROCK and DROWOTA, JJ., and HUMPHREYS, Special Justice, concur.