## CAPE FEAR PAGING COMPANY, d/b/a Cue Paging of Tennessee and Kentucky, Plaintiff–Appellant,

v.

## Joe B. HUDDLESTON, Commissioner of Revenue, State of Tennessee, Defendant–Appellee.

Supreme Court of Tennessee, at Nashville.

Aug. 26, 1996.

C. Michael Norton, Janet P. Sparkman, Wyatt, Tarrant & Combs, Nashville, for Plaintiff–Appellant.

Charles W. Burson, Attorney General & Reporter, Michael E. Moore, Solicitor General, Charles L. Lewis, Deputy Attorney General, Nashville, for Defendant–Appellee.

## OPINION

REID, Justice.

This case presents for review the decision of the Court of Appeals, affirming the judgment of the trial court, which denied the appellant taxpayer's claim for the refund of sales taxes. This Court finds that the taxpayer is entitled to the refund claimed. The Court of Appeals is reversed.

## THE CASE

The taxpayer, Cape Fear Paging Company ("Cape Fear"), is a Tennessee corporation engaged in the business of providing telecommunication paging services in the Nashville area and also access to a national network which provides paging services throughout the country. The paging services provided by Cape Fear utilize a unique technology owned by a Finnish company, Nokia, which has granted to Cue Paging Corporation ("Cue Paging") the exclusive right to distribute Nokia pagers in the United States. Cape Fear is one of several providers of paging services in the Nashville area which utilize the Cue Paging system and Nokia pagers. A Nokia pager is required to receive the paging services provided by Cape Fear, but the company's customers may obtain Nokia pagers from sources other than Cape Fear.

The paging function is accomplished by a telephone call to Cue Paging's central termi-

nal in Chicago, where the message is transmitted by radio signals to an orbiting satellite, from which it is broadcast to a network of FM radio stations throughout the country, and relayed by radio signals to the pager to which the message is directed.

Cape Fear charges its customers a monthly fee for the paging services provided. It also makes Nokia pagers available to its customers for purchase or lease. However, not all of Cape Fear's customers obtain their pagers from Cape Fear. Approximately 20 percent of all of Cape Fear's customers use pagers acquired from sources other than Cape Fear. Approximately 45 percent of Cape Fear's customers who use Cape Fear's pagers purchase rather than lease them; and the remaining customers lease pagers from Cape Fear, for which they pay an additional monthly charge.

In reliance on a "resale certificate" from the Tennessee Department of Revenue, Cape Fear did not pay sales tax on the Nokia pagers when they were purchased. Cape Fear collected from its Tennessee customers and remitted to the Tennessee Department of Revenue sales tax on all charges made for paging services, including the additional monthly charge for pagers leased by Cape Fear. The claim for refund is for sales taxes paid under protest on the purchase price of pagers leased by Cape Fear's customers for which an additional monthly fee was charged.[1]

Both the trial court and the Court of Appeals found that purchases by Cape Fear of pagers leased to the taxpayer's customers were not exempt from taxation.

### STANDARD OF REVIEW

 The construction of statutes and of regulations promulgated pursuant to statutes and the application of those statutes and regulations to undisputed facts are questions of law. *Beare Co. v. Tennessee Dept. of Revenue,* 858 S.W.2d 906, 907 (Tenn.1993). While ambiguities in statutes imposing taxes generally must be resolved in favor of the taxpayer, statutes providing exemptions from

taxation are strictly construed against the claim of exemption. *Pan Am World Services, Inc. v. Jackson,* 754 S.W.2d 53, 55 (Tenn.1988) (quoting *Tennessee Farmers' Coop. v. Jackson,* 736 S.W.2d 87, 90 (Tenn. 1987)). *See also Tibbals Flooring Co. v. Huddleston,* 891 S.W.2d 196, 198 (Tenn.1994) ("Every presumption is against the exemption and a well-founded doubt is fatal to the claim.").

### ANALYSIS

Even in accordance with the strict rule regarding exemption from taxation, the undisputed facts in this case show that the purchases were for resale within the meaning of the statute and, therefore, they are exempt from taxation.

Pursuant to the Retailers' Sales Tax Act, Tenn.Code Ann. § 67–6–101—§ 67–6–712, a tax is imposed upon the business of selling tangible personal property at retail unless the sale is specifically exempted by statute. " 'Retail sales' or 'sale at retail' means a taxable sale of tangible personal property or specifically taxable services to a consumer or to any person for any purpose other than for resale." Tenn.Code Ann. § 67–6–102(23)(A) (Supp.1995). The terms "sale" and "resale," as used in the statute, include the lease of tangible personal property. Tenn.Code Ann. § 67–6–102(24)(A) (Supp.1995). Regulations issued pursuant to the statute provide that "[t]angible personal property sold to be used exclusively for renting or leasing may be sold upon a resale certificate." Tenn. Comp. R. & Regs. 1320–5–1–.32(3) (Jan.1987). Consequently, the sale of tangible personal property to a purchaser who, in turn, leases that property to another is exempt from the tax. Such sales are exempt as sales for resale.

 The determinative issue, then, is whether Cape Fear purchased the pagers for the purpose of leasing them to its customers or in order to provide paging services to its customers. These alternative purposes are not mutually exclusive, but the important distinction is whether furnishing the pagers

---

1. The State does not contest that the tax is not due on the purchase price of pagers sold, rather than leased, by Cape Fear to its customers.

was a constituent aspect of providing paging service.

Although no single fact or circumstance is determinative in this case, the totality of the facts and circumstances show that the pagers were purchased for the purpose of leasing them to the taxpayer's customers. Even though furnishing pagers to customers for an additional charge was beneficial to Cape Fear and was a part of its business, it was a service distinct from providing paging services. It was a service not provided to Cape Fear's customers who obtained their pagers from sources other than Cape Fear or to those customers who purchased their pagers from Cape Fear. Since paging services were also available from other providers and could be received on any Nokia pager, the leased pagers had value separate and apart from Cape Fear's paging services.

The arrangement between the taxpayer and its customers fits the meaning of "lease or rental" as defined in the statute. Section 67–6–102(15) (Supp.1995) defines "lease" as follows:

"Lease or rental" means the leasing or renting of tangible personal property and the possession or use thereof by the lessee or renter for a consideration, without transfer of the title of such property....

Cape Fear retained title to the equipment and made an additional charge for its use, thus it "leased" this equipment.

The taxpayer collected and remitted tax on the charges made for the lease of the pagers to its customers, as required by Tenn.Code Ann. § 67–6–204. The charge made by Cape Fear to its customers for use of the pagers is not exempt from taxation. Section 67–6–204(b) (1994) provides that such a lease payment from customers is exempt only "if the owner of the property maintains continuous supervision over the personal property being leased or rented, and furnishes an operator or crew to operate such property." That statute has been construed to apply to a very limited type of lease arrangement and is not applicable to the facts of this case. *See Hyatt v. Taylor,* 788 S.W.2d 554 (Tenn.1990). Since the lease charge is not exempt, imposition of the tax on the purchase of the pagers leased to the taxpayer's customers and also

on the rental charge would constitute double taxation, which is prohibited by the statute. *See* Tenn.Code Ann. § 67–6–203(a) (1994).

Both the trial court and the Court of Appeals relied upon *Nashville Mobilphone Co. v. Woods,* 655 S.W.2d 934 (Tenn.1983), to find the transactions taxable. Even though that case and the case before the Court involve a similar service, the critical facts in the two cases are significantly different. In *Nashville Mobilphone,* as in the present case, the taxpayer petitioned for a refund of sales and use taxes paid under protest. The taxpayer provided its customers with two-way radio voice communication and paging services whereby customers with a radio telephone unit could communicate through any conventional telephone in the Bell telephone system. In connection with the service, the taxpayer also leased to its customers various types of radio telephone and signaling devices. At issue was whether the taxpayer's purchases of radio phone and signaling equipment which it leased to its customers were exempt as "sales for resale." The Court found the following statement in a Florida case "persuasive":

"In our resolution of the controversy we are primarily influenced by the simple fact that these hooks, ferrules, wires and gadgets are unused, unusable and of no value in and of themselves to the customer, so as to support payment of a separate consideration for their possession, until such time as appellant makes the proper connections to its system so that the customer can watch cable T.V. For this, and nothing else, the customer pays a consideration in the form of his monthly service charge, the only charge made, except for the initial hook-up and equipment deposit."

*Id.* at 937 (quoting *American Video Corp. v. Lewis,* 389 So.2d 1059, 1061 (Fla.App.1980)). The Court then summarized the evidence in regard to the equipment furnished by the taxpayer in that case.

We find this reasoning persuasive. As previously stated, appellant does not rent radio phone or signaling equipment to the general public, but only to its subscribers. While a subscriber may furnish its own equipment and still obtain the service, it

may not rent appellant's equipment without subscribing to the service. Appellant's equipment in the hands of the customer is completely without value to the customer except in connection with and as part of the service for which the customer subscribes. The ultimate user or consumer of the equipment, therefore, is the appellant, utilizing the equipment as a part of its own "radio common carrier system," and there is no sale for resale within the meaning of the statutes.

*Id.* at 937 (footnote omitted).

In order to sustain the imposition of the tax in the present case, the rationale of the *Nashville Mobilphone* case would require a finding that the pagers are "unused, unusable and of no value in and of themselves to the customer" and further, the pagers are "completely without value to the customer except in connection with and as part of the service for which the customer subscribes." *See id.* Contrary to the factual finding in *Nashville Mobilphone,* the pagers which are the subject of this case do have value separate and apart from the taxpayer's service. Consequently, purchases of the pagers leased to Cape Fear's customers are exempt from taxation.

### CONCLUSION

The proof shows that the taxpayer's customers are the ultimate users or consumers of the pagers leased by the taxpayer to its customers. The taxpayer's purchase of those pagers was for resale within the meaning of the statute. Consequently, the taxpayer is entitled to the refund claimed.

The case is remanded to the trial court for such further proceedings as may be necessary.

Costs are taxed against the State of Tennessee.

BIRCH, C.J., and DROWOTA, ANDERSON and WHITE, JJ., concur.