| | |
|---|---|
| **FILED** | |
| **March 16, 2000** | |
| **Cecil Crowson, Jr.** | |
| **Appellate Court Clerk** | |

NASHVILLE CLUBHOUSE INN,   )
CLUBHOUSE INN OF KNOXVILLE  )
and CLUBHOUSE INN AND     )
CONFERENCE CENTER,      )
                                   )
      Plaintiffs/Appellees,     )     Appeal No.
                                   )     **M1998-00898-COA-R3-CV**
v.                           )
                                   )     Davidson Chancery
RUTH E. JOHNSON,       )     No. 96-2143-II
Commissioner of Revenue,   )
State of Tennessee,       )
                                   )
      Defendant/Appellant.    )

## COURT OF APPEALS OF TENNESSEE

## APPEAL FROM THE DAVIDSON COUNTY CHANCERY COURT
## AT NASHVILLE, TENNESSEE

## THE HONORABLE CAROL L. MCCOY, CHANCELLOR

WILLIAM F. LONG, JR.
101 Westpark Drive, Suite 250
Brentwood, Tennessee 37027
     ATTORNEY FOR PLAINTIFFS/APPELLEES

JOHN KNOX WALKUP
Attorney General and Reporter

CHRISTINE LAPPS
NATALIE S. PRICE
Assistant Attorneys General
Office of the Attorney General
Tax Division
Cordell Hull Building, Second Floor
425 Fifth Avenue North
Nashville, Tennessee 37243-0489
     ATTORNEYS FOR DEFENDANT/APPELLANT

## AFFIRMED AND REMANDED

WILLIAM B. CAIN, JUDGE

# O P I N I O N

This case is an appeal from the ruling of the Chancellor granting a sales tax refund to Nashville Clubhouse Inn, Clubhouse Inn of Knoxville, and Clubhouse Inn and Conference Center.

The taxpayers consist of two hotels in Nashville and one hotel in Knoxville that are licensees of Clubhouse Inns of America, Inc. These "upscale limited service" hotels cater to business travelers, and a majority of their guests are repeat customers because of the corporate rates the hotels offer. The hotels offer oversized rooms with the standard amenities but do not offer room service, valet service, or a full dining service.

In order to promote a perception that their guests receive "exceptional value" for their money, each Clubhouse Inn provides registered guests with a complimentary breakfast each morning and with complimentary alcoholic and nonalcoholic beverages at a manager's reception held each evening. Each hotel's marketing materials prominently state that hotel guests "awake each morning to a complimentary full, hot breakfast buffet and unwind at night at our two-hour guest reception with complimentary beverages." The purpose of offering complimentary breakfast and beverages is to obtain a marketing edge on other hotels competing for business customers.

This method of operation is known as the "American Plan," a system of hotel management in which a guest pays a daily rate for room and meals. It can be contrasted to the "European Plan" in which the rate charged to the guest includes only the charge for the room and not for meals.

In order to provide the breakfast buffet and the manager's reception, each hotel has a restaurant and lounge. Each hotel must obtain appropriate state and local licenses and permits in order to provide these services. Essentially, each hotel must be licensed to operate a restaurant and a cocktail lounge. These facilities are open to the public as well. Persons who are not registered guests must purchase their breakfast or alcoholic beverages. The Commissioner does not contest the retail character of the sales to non-guests.

The hotels carefully control access to the complimentary breakfasts and beverages. Hotel guests must sign a register at breakfast and may only obtain alcoholic beverages at the manager's reception by presenting dated tickets furnished to hotel guests each day of their stay. Since the cost of the breakfast service and the beverages is included in the price of the room, the hotel guests' bills do not contain a separate charge for either the breakfast or the beverage service. Room rates at Clubhouse Inns do not vary depending on whether the guest eats breakfast or receives beverages at the manager's reception. Thus, persons who do not take advantage of the complimentary breakfast and beverages pay the same daily room rate as guests who do partake of the breakfast and beverage services.

Persons not staying at the hotel who are accompanying hotel guests are not entitled to complimentary breakfast or alcoholic beverages. These non-guests must purchase breakfast or tickets for alcoholic beverages at the hotel's front desk, or the hotel guest may arrange to have these charges included on his or her bill. Under the latter arrangement, the charges for the persons who are not registered hotel guests are itemized separately on the guest's bill and are accounted for separately on the hotel's books.

Persons purchasing separate breakfasts or alcoholic beverage tickets must pay the applicable sales and alcoholic beverage taxes on their purchases. Guests do not pay separate sales or alcoholic beverage taxes on their complimentary breakfasts or beverages. The hotel collects the applicable sales tax on each guest's bill and remits the appropriate alcoholic beverage taxes based on the tickets redeemed at the manager's reception.

Each Clubhouse Inn incurs substantial cost in providing breakfast and alcoholic beverages to its registered guests. These costs are reflected in each hotel's financial records as separate and distinct components of the hotel's overall operating costs. When each hotel purchases the food and beverages for its inventory, it presents its suppliers with the proper certificate and, as a result, does not pay sales tax on these items. The price of the rooms at each hotel takes into account the cost incurred for providing the breakfast and beverages, and the prices are set in order to enable each hotel to make a profit on the entire overnight room

3

package that includes the room and the complimentary breakfast and beverages.

The current dispute arises from sales tax audits performed by the Department of Revenue for the period from January 1, 1990 through August 31, 1993.[1]  Following these audits, the Commissioner assessed the Knoxville Clubhouse Inn $26,243, the Nashville Clubhouse Inn $25,700, and the Clubhouse Inn and Conference Center $29,296.  The hotels paid the assessed taxes under protest and filed suit in the Chancery Court for Davidson County seeking to recover the disputed taxes.  Following a bench trial, the trial court entered an order on December 18, 1998, finding that each of the hotels were not required to pay the disputed tax and awarding each hotel a judgment for the disputed tax, together with interest and reasonable legal expenses pursuant to Tennessee Code Annotated section 67-1-1803(d) (1998).  The Commissioner has appealed from this order.

At the outset it must be noted that the taxpayer bears the burden of demonstrating its entitlement to the "sales for resale" exemption in Tenn. Code Ann. § 67-6-102(24)(A) (1998).

The "for any purpose other than for resale" language in Tenn. Code Ann. § 67-6-102(24)(A) has been construed as an exception to the sales tax statute.  *See Colemill Enters., Inc. v. Huddleston*, 967 S.W.2d 753, 756 (Tenn. 1998).  Accordingly, it must be construed against the taxpayer, and an exception from sales tax must positively appear because it will not be implied.  *See, e.g., Hyatt v. Taylor*, 788 S.W.2d 554, 556 (Tenn. 1990); *American Cyanamid Co. v. Huddleston*, 908 S.W.2d 396, 400 (Tenn. Ct. App. 1995).  Any well-founded doubt is sufficient to defeat a claimed exemption from taxation.  *See United Canners, Inc. v. King*, 696 S.W.2d 525, 527 (Tenn. 1985).

That being said, however, we must look to the statutes and the regulations to determine the scope of the exemption.  In this case, Tenn. Code Ann. § 67-6-102(24)(A) defines "sale at retail" as "taxable sale of tangible personal property

---

[1] The audit period for one of the hotels in Nashville covered the period from August 21, 1991 through August 31, 1993.

. . . to a consumer . . . for any purpose other than for resale." In addition, Tenn. Comp. R. & Regs. r. 1320-5-1-.63(1) (1987) defines "sales for resale" as "those whereby a supplier of materials . . . makes available to legitimate dealers actually selling such property . . . as such." Thus, in order to prevail, the hotels must demonstrate that they are actually selling breakfast and beverages "as such" to the registered guests at their hotels.

Tenn. Code Ann. § 67-6-102(25)(A) defines a "sale" as "any transfer of title or possession . . . of tangible personal property for a consideration." Thus, there are three elements necessary to constitute a taxable sale: (1) the transfer of title or possession or both, (2) of tangible personal property, and (3) for a consideration. *See Mast Advertising & Publishing, Inc. v. Moyers*, 865 S.W.2d 900, 902 (Tenn. 1993); *Volunteer Val-Pak v. Celauro*, 767 S.W.2d 635, 636 (Tenn. 1989). For this purpose, consideration means either a benefit to the promisor or a detriment to or obligation on the promisee. *See Trailer Conditioners, Inc. v. Huddleston*, 897 S.W.2d 728, 731 (Tenn. Ct. App. 1995).

The Commissioner argues that the hotels must live with the legal consequences of their choice to represent to registered guests that they are giving away breakfasts and beverages free rather than selling them. Thus, the Commissioner insists that the form of the transaction is of controlling importance. *See Standard Advertising Agency, Inc. v. Jackson*, 735 S.W.2d 441, 443 (Tenn. 1987). The hotels respond that the courts should not apply the "form-over-substance" doctrine and that the substance of the transaction should control over its form.

The Tennessee Supreme Court has applied the "form-over-substance" doctrine in a sales tax case involving a taxpayer that "gave" away merchandise to its customers.[2] This case involved a drug manufacturer that sold pharmaceuticals directly to hospitals and physicians. The manufacturer purchased large quantities of non-pharmaceutical items that it "gave" to customers when

---

[2] It is well to note that the rule as applied in this case as well as *Morton*, quoted *Infra* in actuality should be considered "substance over form." The net effect, however, is the same. The chancellor is affirmed. Our language reflects a deference to the parties here and the supreme court in *Morton*.

5

they purchased pharmaceuticals from a catalogue in which the prices had been adjusted to reflect the cost of the non-pharmaceutical items. The invoices received by customers did not reflect the cost of the non-pharmaceutical items, but the costs of these items was carried on the taxpayer's books as a selling expense. The Commissioner asserted that the taxpayer was not selling the non-pharmaceutical items to its customers and thus had purchased these items for its own use. Quoting the trial court with approval, the Court noted that "[r]egardless of what anything may be called it remains what it is. . . . So it can be rightly said that the form of these transactions is a "gift" but the real substance is a sale." *Morton Pharmaceuticals, Inc. v. MacFarland*, 212 Tenn. 168, 171, 368 S.W.2d 756, 757 (1963). The Court also pointed out that the customers knew that they were actually paying for these items even though they were not separately billed and that the taxpayer had paid the tax on the entire amount of its sales to its customers.

The same reasoning holds for the case at bar. Even though the hotels' registered guests were not separately billed for the breakfasts and beverages, they knew that they were not receiving these items "free" and that the cost of these items was reflected in the price of their rooms. What other inference can be drawn from the fact that the hotels were charging non-registered guests for these items? Secondly, the hotels complied strictly with the "sales for resale" requirements in the revenue regulations and accounted for their costs to provide these items. They also collected sales tax on the room charges which included their costs to provide the breakfasts and beverages.

The burden on appeal rests on the Commissioner to show how the evidence preponderates against the Chancellor's findings. We conclude that the Commissioner has not demonstrated such preponderance.

Although there are precedents from other states supporting the Commissioner's conclusion that the hotels had purchased the food items in inventory for their own use rather than fo the purpose of resale, the Tennessee Supreme Court has noted this "disagreement among the cases." *Nashville Mobilphone Co. v. Woods*, 655 S.W.2d 934, 937 (Tenn. 1983). There are decisions from other jurisdictions that support the hotels' position as well. *See*

6

*State v. Delta Airlines, Inc.*, 356 So.2d 1205 (Ala. Civ. App. 1978); *Undercofler v. Eastern Airlines, Inc.*, 147 S.E.2d 436 (Ga. 1966); *S & R Hotels v. Fitch*, 634 So.2d 922 (La. Ct. App. 1994); *Drury Supp. Co. v. Director of Rev.*, No. 95-000870RV, 1996 WL 633387 Mo. Admin. Hrg. Comm'n Oct. 8, 1996).

Many of the decisions both in favor of and in opposition to the hotels' arguments rest on unique provisions of each jurisdictions' revenue statutes and regulations. Thus, their precedential value is weakened. We are primarily guided by our statutes and regulations and the judicial precedents construing them.

For example, Tenn. Comp. R. & Regs. r. 1320-5-1-.70(1) (1987) imposes sales tax on the charges for hotel rooms. Similarly, Tenn. Comp. R. & Regs. r. 1320-5-1-.33(1) (1987) provides that "[m]eals furnished at any restaurant . . . at which meals are served to the public are subject to the Sales Tax." Tenn. Comp. R. & Regs. r. 1320-5-1-.35(1) (1987) contains a similar provision for meals, food, and drink sold by airlines. However, Tenn. Comp. R. & Regs. r. 1320-5-1-.35(2) provides that "[i]n cases where the meals or any other item of food or drink are served without a specific charge therefor to the passengers, the carrier will be considered to be the user and consumer thereof."

The undisputed evidence in this case shows that, in addition to providing hotel rooms, the taxpayers in this case are also operating restaurants and lounges where meals and alcoholic beverages can be purchased for on-premise consumption. They are required to collect the required taxes on these activities, and there is not dispute that they do. Unlike the regulation governing airlines, there is no regulation stating that a hotel will be considered the user or consumer of items of food and drink that are served to guests without a specific charge therefor.

The Chancellor, applying the Tennessee Supreme Court's decision in *Cape Fear Paging Co. v. Huddleston*, and *Nashville Mobilephone Co., Inc. v. Woods,* found that since these food and beverage items had value independent of the lodging service being provided, and Clubhouse Inns had internally assigned a value to the sale of these services, then the above food and beverage items were being sold "at retail", thus exempting the purchase of the component parts of

7

these items from sales and use tax. *Cape Fear Paging Co. v. Huddleston,* 937 S.W.2d 787 (Tenn. 1996).

The applicability of these decisions to the facts of this case may be somewhat tenuous at first blush. These cases seem to make two points. First, if taxpayers who are service providers purchase tangible personal property that is used to enable them to provide their service, then they are not reselling the tangible personal property and must pay sales tax on the property. Thus, when Nashville Mobilephone purchased the radio telephones it supplied to its customers, it should have paid tax on them because these radio telephones had no value to Nashville Mobilephone or its customers independent of its voice communications service. Second, if a taxpayer who is a service provider purchases tangible personal property that could have a value independent from the service the taxpayer provides, the taxpayer need not pay tax on the equipment. Thus, Cape Fear's purchase of the Nokia pagers was not taxable because the pagers had value to Cape Fear and its customers apart from the pager service. Justice Reid went to some lengths to point out that in addition to selling or leasing pagers to customers who purchased its paging service, Cape Fear also sold or leased pagers to persons who did not subscribe to their paging service.

The food and beverages purchased by the hotels were not only sold to registered guests but also to persons who were not registered guests. Accordingly, the food had an independent value to the hotels, and the hotels were not required to pay tax on the food and beverages when they purchased them. *See Cape Fear and Nashville Mobilephone, supra.*

As stated above, the issue in this case is whether the hotels were selling breakfasts and beverages "as such" to their registered guests. In order for there to be a sale, there must be a transfer of title or possession and consideration. There was a transfer of possession of the food from the hotels to their registered guests, and there was consideration for the transfer because the proof is undisputed that the cost of providing the food and beverages was included with the room as part of a package deal. Surely a registered guest would have had a contractual right to demand breakfast or beverages had one of the hotels declined to give it to him or her.

The ruling of the Chancellor is affirmed in all respects. The cause is remanded to the trial court for proceedings pursuant to Tennessee Code Annotated section 67-1-1803(d) and such further action as may be necessary. Costs on appeal are taxed against the Commissioner.

_____
WILLIAM B. CAIN, JUDGE


CONCUR:


_____
BEN H. CANTRELL, PRES. JUDGE, M.S.


_____
WILLIAM C. KOCH, JR., JUDGE