**ADT SECURITY SERVICES, INC.**

v.

**Ruth E. JOHNSON, Commissioner of Revenue, State of Tennessee.**

Court of Appeals of Tennessee, at Nashville.

Sept. 15, 2009 Session.

Nov. 19, 2009.

Order Denying on Rehearing Dec. 16, 2009.

Application for Permission to Appeal Denied by Supreme Court June 17, 2010.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, and Jonathan N. Wike, for the Appellant, Ruth E. Johnson, Commissioner of Revenue, State of Tennessee.

Brett R. Carter, Charles Arthur Trost, Christopher Andrew Wilson, Nashville, and Michael G. Stewart, for the Appellee, ADT Security Services, Inc.

## OPINION

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

The trial court ruled that taxpayer ADT Security Services was liable for sales and use tax on equipment it installed as part of its security monitoring service contracts. The trial court also ruled that taxpayer was entitled to offset its liability for sales and use taxes, under the doctrine of equitable recoupment, by taxes taxpayer had charged and remitted on the installation of the equipment. We affirm the trial court's judgment with respect to taxpayer's liability for sales and use taxes, and reverse with respect to taxpayer's entitlement to an offset under the doctrine of equitable recoupment.

The Plaintiff/Appellee in this tax action, ADT Security Services, Inc. ("ADT"), sells security and monitoring services and equipment to residential and commercial customers. The Tennessee Department of Revenue ("the Department") conducted an audit of ADT for franchise and excise taxes for the period of January 1, 1994, through December 31, 1996, and for sales and use taxes for the period of December 1, 1994, through November 30, 1997 ("the audit period"). By notice dated June 22, 2000, the Department notified ADT that it had been assessed $1,021,325.43 in tax and interest. This dispute concerns the assessment of $973,478.43 in sales and use taxes, and interest, on security monitoring equipment installed by ADT in connection with its monitoring service contracts.[1]

In July 2001, ADT filed a complaint in the Chancery Court for Davidson County seeking a declaration that the Department's assessment of a sales and use tax deficiency in the amount of $973,473.43 for the audit period was incorrect, invalid, wrong and void. In its complaint, ADT asserted that it had purchased the monitoring equipment as equipment for re-sale or lease to its customers in connection with its monitoring services contracts. ADT asserted that its customers who purchased monitoring services leased the monitoring equipment, including repair parts, and that the Department's assessment of use tax on ADT's purchase of the equipment was unlawful because it imposed a use tax on equipment purchased by ADT for resale or lease. It further asserted that the Department's assessment imposed a double tax on a single integrated transaction in a manner that provided ADT with no adequate remedy at law for avoiding the double taxation.

The Department answered in October 2001. In its answer, the Department de-

---

1. It is undisputed that ADT's monitoring services are not subject to Tennessee sales and use tax. It is also undisputed that ADT paid the taxes applicable to the installation of monitoring equipment. This appeal does not involve equipment sold by ADT as outright sales.

nied that ADT leased monitoring equipment to its customers who contracted for monitoring services during the audit period. The Department asserted that ADT's purchases of the equipment at issue on a resale certificate under Tennessee Code Annotated § 67–6–102(31)(A) were not proper. The Department counterclaimed, asserting the assessment of sales and use tax in the amount of $666,653, plus interest in the amount of $306,825.43, was proper. It sought judgment in its favor, plus additional statutory interest, and an award of attorney's fee and expenses pursuant to Tennessee Code Annotated § 67–1–1803(d). The Department further asserted that collection of the amount due under the assessment was not stayed because ADT had not posted a bond or irrevocable letter of credit or any documents pursuant to Tennessee Code Annotated § 67–1–1801(c)(1)(B)–(C).

ADT posted bond on October 26, 2001, and answered the Department's counterclaim in January 2002. In its answer, ADT again asserted that the Department's assessment of sales and use taxes for the audit period was incorrect and invalid.

The matter was tried on August 2 and 3, 2006, and closing arguments were heard on December 6, 2006. During closing argument, ADT asserted that, even if the Department was correct in its assertion that ADT was using the monitoring equipment in the performance of its security monitoring contracts, and although it did not characterize its contracts as "leases" of installed equipment, the installation fees it charged its customers incorporated a charge for the lease of equipment. ADT argued that when it charged and remitted the taxes on the installation of the equipment, it collected and remitted the amount of sales tax that would have been due had it charged separately for the lease and the installation of the equipment. It argued

that the Department could collect taxes under only one theory, and that, if there had been no sale or lease of equipment, then there should have been no tax collected and remitted on the installation of that equipment. ADT asserted,

> [n]ot surprisingly ... there is no tax in Tennessee on your act of installing your own stuff.... I'll tell you, the statute in this area is kind of squirrely. But luckily, the Department has issued regulations which are absolutely binding on the Department. And what the Department's regulation says is: Tax on installation services, which we know we collected, is only owed in connection with a sale. See, you only pay tax on installation services in two instances. You pay charges for installing tangible personal property, whether made as part of and in connection with the sale of the tangible personal property .... or whether made for installing tangible [personal] property, which has been sold in a separate bona fide transaction when the property remains tangible personal property.
>
> .... But in each case, you've got to have a sale.... You have to have a sale with the installation of the thing that's to be installed in order for it to be taxed. And in this case, we, of course, recognize there was a sale or, in this case, a lease, and equivalent event. So we collected tax on these installation services.

In its closing argument, ADT asserted that it was liable for either a sales and use tax on the monitoring equipment or an installation tax, but not both. It asserted that, under the doctrine of equitable recoupment, the Department could not "have it both ways." ADT argued that the Department could not assess taxes on one transaction under two separate theories. ADT asserted that, under the doctrine of equitable recoupment, if it was liable for

sales and use taxes on the equipment, it was entitled to a credit for the amount of taxes collected and remitted on the installation of that equipment.

The Department, on the other hand, argued that ADT had not demonstrated that it ever leased its equipment to a customer who could then obtain monitoring services from a competitor. The Department asserted that, although ADT customers could subscribe to ADT's monitoring services without purchasing or leasing equipment from ADT, and that customers could purchase alarm equipment from ADT without subscribing to monitoring services, customers could not lease equipment from ADT without subscribing to monitoring services. The Department argued that ADT did not lease the equipment in question, but used it in the provision of its monitoring services. The Department stated, "[t]here is no leasing separate and apart from its service. It's not even theoretically possible because they say [']we don't do it.[']"

In its closing argument, the Department further asserted that ADT had not pled the doctrine of equitable recoupment. It also argued that the exhibits offered by ADT did not demonstrate that ADT had collected sales tax on the equipment installed in connection with its monitoring services. The Department asserted, "[a]ll we know in this case is that they collected a tax on an installation charge .... so you have a question here, well, how much— how much of that equipment and that installation charge, how much of that is attributable to the—to the ADT—owned equipment?" The Department argued that ADT owed sales tax on the equipment it purchased for use in its monitoring contracts. The Department further argued that ADT had failed to carry its burden to demonstrate that a portion of the installation charge paid by its customers was in

fact a lease charge, and that a portion of the installation taxes collected should therefore be credited to the sales and use tax amounts assessed against ADT. The Department asserted that the "equitable recoupment argument may make some sense, but how much is the offset going to be? The taxpayer [ADT] hasn't proved it. They have—an installation charge for what? How much of that was for equipment, how much of that was for labor? They haven't demonstrated that[.]" The Department contended that ADT would not provide

> this property to you without a two—or three—year agreement. And what they were doing was they were pushing off the costs, what they were paying their vendor for their monitoring equipment and what they were paying for labor. They're pushing these costs off into their—this two or three-year service contract for which they're paying no taxes....
>
> .... They're never paying a tax, in essence, on the property they bought.

On June 25, 2008, the trial court entered an order holding that ADT had not met its burden of demonstrating that it was exempt from sales and use tax on equipment installed in connection with its monitoring services. The trial court found that the evidence demonstrated that ADT was using the equipment to provide its monitoring services rather than leasing it to its customers. The trial court found, "ADT secures the necessary equipment to provide the service for which the customer had contracted; this is the sole purpose of ADT's purchase of the equipment.... As respects the ADT-owned equipment, it had no value separate from the monitoring service." The trial court further determined that

> ADT charge[d] a one-time fee for the cost of installation and use of the equip-

ment and collects sales tax on these charges. The use charge is intended to cover the cost of the equipment to ADT. A sales tax is charged on the amount charged for installation of ADT-owned equipment; the installation charge is not broken down into labor and materials, as is the case in installation of outright sales.

The trial court sustained the Department's assessment of sales and use tax against ADT. The trial court also determined that the assessment amount should be offset by the "amount paid by ADT in sales tax on the installation of the ADT-owned equipment." The court stated, however, that it was "not clear to the [c]ourt ... how much of the sales tax paid by [ADT][was] attributable to the installation of ADT-owned equipment." The trial court ordered ADT to file a statement of the amount it contended it was entitled to as an offset against the assessment of sales and use taxes.

On July 3, 2008, ADT submitted its statement of the amount for which it asserted an offset. In its statement, ADT asserted it had collected and remitted sales tax on the fee charged for ADT-owned security systems, which included the price of the equipment installed, in the amount of $684,305. It asserted that, because it had collected more than the sales and use tax amount assessed by the Department, it was not liable for any additional tax amounts.

The Department filed a motion to alter, amend, and/or reconsider on July 18, 2008. In its motion, the Department submitted that the trial court had erred in concluding that ADT was entitled to offset its sales tax liability by the tax amounts it collected and remitted on the installation of equipment. The Department contended that if the court determined that ADT should not have charged taxes on the installation of

the equipment, then those amounts should be refunded to ADT's customers rather than used to offset ADT's sales and use tax liability. In its accompanying memorandum, the Department asserted that ADT was liable for sales tax on the equipment it purchased for use in its monitoring contracts where that equipment was not purchased for "retail sale" or "sale at retail." The Department further argued that the tax on installation imposed by Tennessee Code Annotated § 67–6–102(34)(F)(vi) is a tax on "a particular type of service" that is imposed without reference to the cost of the components installed. The Department argued that the installation tax is distinct from the sales tax, if any, imposed on the tangible personal property that is installed. It asserted, "the tax on installation is not a complementary or offsetting tax with respect to the tax on sales of tangible personal property[,]" but "an independent tax on a service[.]"

The trial court issued its final order in the matter on August 5, 2008. The trial court sustained its order of June 25 and denied the Department's motion to alter, amend, or reconsider. The trial court also determined that the "undisputed offset amount ... exceed[ed] the $522,482 use tax assessment on ADT-owned equipment" and that ADT was entitled to a full offset. It held that, because the original sales and use tax assessment amounted to $666,653, including amounts other than the $522,482 disputed in the proceedings relevant to ADT-owned equipment, ADT remained liable for the remaining assessment in the amount of $144,171, plus applicable interest. The Department filed a timely notice of appeal to this Court.

### Issues Presented

The Department presents the following issue for our review:

Whether the trial court erred in holding that Plaintiff/Appellee ADT Security Services, Inc. ("ADT") is entitled to apply the amount of tax ADT collected from its customers on initial charges for installation of monitoring equipment as an offset against ADT's use tax liability for its own purchase of the monitoring equipment from various vendors.

ADT cross-appeals and presents the following issue for our review:

Whether the Chancellor erred in determining that ADT's security monitoring equipment was not leased to ADT's customers because it did not have value separate and apart from the security monitoring services, and therefore holding that ADT was not entitled to the "sale for resale" exemption form Tennessee sales tax and was liable for use tax on the equipment.

### Standard of Review

We review the trial court's findings of fact with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R.App. P. 13(d). Accordingly, we will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. The construction of a statute is a question of law which we review *de novo*, however, with no presumption of correctness attached to the determination of the trial court. *Hill v. City of Germantown*, 31 S.W.3d 234, 237 (Tenn.2000).

Our objective when construing a statute is to effectuate the purposes of the General Assembly. *Lipscomb v. Doe*, 32 S.W.3d 840, 844 (Tenn.2000). Insofar as possible, the intent of the General Assembly should be determined by the natural and ordinary meaning of the words used in the statute,

and not by a construction that is forced or which limits or extends the meaning. *Id.* When the language of a statute is clear, we must utilize the plain, accepted meaning of the words used by the General Assembly to ascertain the statute's purpose and application. If the wording is ambiguous, we must look to the entire statutory scheme and at the legislative history to ascertain the General Assembly's intent and purpose. We must construe statutes in their entirety, neither constricting nor expanding the General Assembly's intent. In so doing, we assume that the General Assembly chose the words of the statute purposely, and that the words chosen "convey some intent and have a meaning and a purpose" when considered within the context of the entire statute. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004) (citations omitted).

This Court must construe taxation and exemption statutes differently. *Covington Pike Toyota, Inc. v. Cardwell, Comm'r of Revenue*, 829 S.W.2d 132, 135 (Tenn.1992). Taxation statutes must be construed liberally in favor of the taxpayer and strictly against the taxing authority. *Id.* They will not, therefore, be extended beyond the clear intention of the General Assembly. *Id.* Statutes providing exemptions from taxation, on the other hand, must be strictly construed against the taxpayer, and the taxpayer carries the burden of demonstrating an entitlement to an exemption. *Id.*

### Analysis

We begin our analysis by noting that this dispute does not pertain to monitoring equipment sold [2] by ADT to its customers as outright sales. Rather, this dispute

---

**2.** The security equipment includes smoke and motion detectors; sensors; glass breaks; touch pads; horn modules; water flow detectors; heat therms; wiring; pull stations; and control panels.

pertains to ADT-owned equipment installed in conjunction with ADT's security monitoring services, services for which ADT charged a monthly fee. The questions presented, as we perceive them, are 1) whether ADT has demonstrated that it was exempt from liability for sales and use taxes on security system components that it purchased under a certificate of resale and then installed in conjunction with its security monitoring services;[3] and 2) if ADT was liable for the sales and use taxes assessed by the Department, whether, under the doctrine of equitable recoupment, ADT's liability should be offset by taxes charged and remitted on the installation of equipment. We turn first to whether ADT carried its burden of demonstrating that it was exempt from the sales and use taxes assessed by the Department.

### Liability for Sales and Use Tax

ADT's argument, as we perceive it, is that it leased the security systems to its customers, and that it charged and remitted sales taxes on the leased systems as an element of the one-time installation fees it charged its customers. ADT contends that the "lease" price was included in the installation fee. The Department does not assert that ADT would be liable for sales and use taxes on leased equipment where sales taxes were charged and remitted on the lease amounts. Rather, the Department argues that the proof does not demonstrate that ADT "leased" the equipment to its customers. The Department contends that ADT installed the security system components as part of its security monitoring contracts, and therefore used the equipment in fulfillment of its own contracts. It asserts that the proof demonstrates that ADT charged its customers

for installation of security systems, not for the lease of equipment. The trial court determined that ADT did not lease the equipment, but used it in the performance of its own security monitoring services and that ADT was, therefore, liable for sales and use taxes on the various components.

■ As we have noted in similar circumstances, the determinative inquiry in this case is whether ADT purchased the equipment components for the purpose of leasing equipment to its customers or in order to provide its security monitoring services to its customers. *See Cape Fear Paging Co. v. Huddleston,* 937 S.W.2d 787, 788 (Tenn.1996); *Nashville Mobilphone Co., Inc. v. Woods,* 655 S.W.2d 934, 937 (Tenn. 1983); *Sec. Fire Prot. Co., Inc. v. Huddleston,* 138 S.W.3d 829, 839 (Tenn.Ct.App. 2003). Upon review of the record, we cannot say the evidence preponderates against the finding of the trial court that ADT did not lease the ADT-owned equipment to its customers, but used it in the performance of its security monitoring contracts. The ADT customer contracts contained in the record clearly indicate that ADT charged its customers only an installation charge for the installation of a security monitoring system to be utilized in conjunction with ADT's monitoring services. Installation taxes were collected on this amount. No equipment fee or lease fee is indicated on the contracts. Additionally, ADT employees testified that the equipment was known as and generally referred to as "ADT-owned" equipment. Department auditors testified at trial that ADT never indicated that the equipment was leased equipment before the notice of assessment was issued. Additionally, al-

---

**3.** We note that this issue is properly analyzed under the Code as it existed during the audit period. However, because the applicable Code provisions remain substantially the same under the current Code for the purposes of this lawsuit, we will reference the current Code sections here.

though a customer could contract for ADT monitoring services using other equipment, the testimony in the record indicates that a customer could not lease equipment from ADT and obtain monitoring services from another provider. We agree with the trial court that ADT used the equipment components in furtherance of its own security monitoring contracts. ADT has failed, therefore, to carry its burden to demonstrate that its purchases of monitoring system components were exempt from sales and use taxes as a sale for resale under Tennessee Code Annotated § 67–6–102(34)(A)(2006).

### Offset Under Doctrine of Equitable Recoupment

 We next turn to whether, under the doctrine of equitable recoupment, ADT is entitled to offset its liability for sales and use taxes by tax amounts collected and remitted on the installation of ADT-owned monitoring equipment. Equitable recoupment is "[a] doctrine allowing a taxpayer to offset previously overpaid taxes against current taxes due, even though a taxpayer is time-barred from claiming a refund on the previous taxes .... this type of recoupment can be asserted only if the statute of limitations has created an inequitable result." *Blacks Law Dictionary* 579 (8th ed.2004). Ordinarily, it is a defensive remedy which is applicable to mitigate damages. *Id.* Equitable recoupment is "a judicial doctrine ... that allows taxpayers and the government to offset obligations to each other with amounts arising out of the same transaction, which are otherwise time-barred." *WG & L Tax Dictionary* 232 (2002). "If an overpayment in one tax liability and a deficiency in another tax liability arise from the same transaction, the doctrine of equitable recoupment allows the [taxing authority] to recoup the deficiency to the extent of the overpayment, even through the assessment of the

deficiency is otherwise barred." Rev. Rul. 81–287, 1981–2 C.B. 83 (citing *See Stone v. White,* 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937), Ct. D. 1232, 1937–1 C.B. 224; *Bull v. United States,* 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), Ct. D. 969, XIV–1 C.B. 310; *United States v. Herring,* 240 F.2d 225 (4th Cir.1957); Rev. Rul. 71–56, 1971–1 C.B. 404). The doctrine similarly provides an affirmative defense to a taxpayer seeking to offset a tax deficiency by the amount of an overpayment arising out of the same transaction when a claim for refund is time-barred. *Menard, Inc. v. Comm'r,* 130 T.C. 54, 62 (2008).

In the present case, the Department asserts the trial court erred in allowing ADT to offset its liability for sales and use tax by taxes collected on the installation of the equipment. The Department asserts that the trial court erred by permitting an offset under the doctrine of equitable recoupment because ADT did not assert the doctrine until after the matter was tried. The Department asserts ADT therefore waived the right to raise the doctrine as a defense. The Department also submits that, "without discussion or support," the trial court directed ADT to submit a statement of the offset amount; that ADT submitted an amount which it claimed represented the portion of the installation charge that was, in fact, an equipment cost; and that the trial court, "again without discussion or support," permitted ADT an offset in the amount ADT claimed. The Department contends that the trial court's ruling is not supported by Tennessee statutes or case law, and that it is contrary to its ruling that ADT did not lease or sell the ADT-owned equipment to its customers. The Department further argues that sales and use taxes are distinct from installation taxes. The Department submits that installation taxes levied under Tennessee Code Annotated §§ 67–6–

102(34)(F)(vi) and 67–6–205(c)(6) are taxes on a particular type of service, and are distinct from and independent of sales and use taxes. The Department asserts that, unlike use tax, the tax on installation is not complementary to the sales tax on tangible personal property.

ADT, on the other hand, asserts the trial court properly allowed it to offset its liability for sales and use taxes by amounts ADT collected and remitted as installation taxes. ADT asserts that the Department's contention that the trial court erred in allowing the offset is "flawed" as inconsistent with the Department's argument that ADT purchased the monitoring equipment for its own use in its security monitoring contracts. ADT asserts that there is no tax on the installation of property installed for one's own use. ADT submits that there must be a separate "sale" of the installed property in order for the installation service to be taxed. It concludes that, if the monitoring equipment was neither sold nor leased but merely installed for ADT's own use in providing monitoring services, the installation tax was not applicable. ADT contends that the levy of a sales and use tax in addition to an installation tax would result in a double taxation.

 We begin our analysis of this issue by noting that equitable recoupment is an affirmative defense. *Menard*, 130 T.C. at 68. Under Tennessee Rule of Civil Procedure 8.03, "any ... matter constituting an affirmative defense" must be set forth in a pleading prior to trial. Failure to pled an affirmative defense generally results in a waiver of the defense. E.g., *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 678 (Tenn.Ct.App.2007). In its brief to this Court, ADT asserts that, contrary to the Department's contention that ADT failed to assert the defense at trial, ADT asserted an entitlement to an offset in its pre-trial brief and at the trial

of this matter in August 2006. Upon review of the record, we note that ADT did not assert the defense of equitable recoupment in its reply to the Department's counter-claim. In its July 2006 pre-trial brief to the trial court, ADT asserted that it was entitled to an exemption from sales and use tax on monitoring equipment because the equipment was leased to ADT's customers. It further asserted that the equipment remained personal property but that, if the monitoring systems were to be deemed fixtures, it would be entitled to an offset of the assessed sales and use tax for the tax collected on installation. Similarly, at the August 2006 hearing of the matter, ADT addressed the question of offset within the context of asserting that the monitoring equipment remained personal property and did not become fixtures.

 We agree with the Department that ADT failed to specifically assert the doctrine of equitable recoupment until final closing arguments after the close of proof. ADT's claim to an offset in the trial court arose solely within the context of determining whether a monitoring system became a fixture. In its brief to this Court, ADT quotes 631 BNA Tax Management Portfolio at A–29–30 for the rule that "[e]quitable recoupment is only allowed where: (1) the tax and the refund arise out of a single transaction; and (2) the single transaction is subject to two taxes based on inconsistent legal theories." The party claiming the defense of equitable recoupment carries the burden to demonstrate that it applies. *Menard, Inc. v. Comm'r*, 130 T.C. 54, 68 (2008). In order to establish the defense, the party must prove that "(1) the overpayment or deficiency for which recoupment is sought by way of offset is barred by an expired period of limitation; (2) the time-barred overpayment or deficiency arose out of the same transaction, item, or taxable event as the

overpayment or deficiency before the Court; (3) the transaction, item, or taxable event has been inconsistently subjected to two taxes; and (4) if the transaction, item, or taxable event involves two or more taxpayers, there is sufficient identity of interest between the taxpayers subject to the two taxes that the taxpayers should be treated as one." *Id.* Upon review of the record, we agree with the Department that these elements were not pled or tried by implication in the trial court. Accordingly, ADT waived the affirmative defense of equitable recoupment where it neither pled it in accordance with Tennessee Rule of Civil Procedure 8.03 and where it was not tried by implication.

### *Holding*

In light of the foregoing, the judgment of the trial court is affirmed with respect to ADT's liability for sales and use taxes as assessed by the Department. The trial court's judgment is reversed with respect to ADT's entitlement to an offset under the doctrine of equitable recoupment. This matter is remanded for determination of ADT's tax liability in light of this Opinion. Costs of this appeal are taxed to the Appellee, ADT Security Services, Inc.

### ORDER

The Appellee/Cross–Appellant, ADT Security Services, Inc., has filed a petition for rehearing. After due consideration, the petition is denied. Costs are assessed to ADT Security Services. Inc. **IT IS SO ORDERED.**