Jim H. APEL *v.* Ronald CUMMINGS

CA 01-8                                                    61 S.W.3d 214

Court of Appeals of Arkansas
Division IV
Opinion delivered December 5, 2001

*Lea Ellen Fowler*, for appellant.

*James W. Wyatt*, for appellee.

J OSEPHINE LINKER HART, Judge. Jim Apel appeals the denial of his petition to adopt the twin children of his wife and appellee, Ronald Cummings. He argues that the probate court erred by finding the adoption was not in the best interest of the children. We agree and reverse.

On April 1, 1998, Sarah Apel, mother of the children and wife of appellant, divorced Ronald Cummings, appellee, and obtained custody of their two-year-old twins, Matalynn and Joshua. On May 1, 1998, Sarah married appellant and moved with the children to

appellant's home in Jefferson County. On June 22, 1999, appellant filed a petition for adoption of the twins along with a consent to adoption that failed to conform to the requirements of Ark. Code Ann. § 9-9-209(b)(2) (Repl. 1998)[1]. Appellant attempted to correct the error by mailing to appellee a second consent that fully complied with the statutory requirements. After receiving the second consent for adoption, appellee filed an objection to the adoption and withdrew his former consent on December 20, 1999. The probate court determined that appellee's consent to the adoption was not required but denied the adoption, finding that the adoption was not in the best interest of the children. From that order comes this appeal.

Although probate proceedings are reviewed *de novo*, we will not reverse a probate court's decision regarding the best interest of a child unless it is clearly against the preponderance of the evidence or clearly erroneous. *See* Ark. Code Ann. § 9-9-209(b)(2) (Repl. 1998); Ark. R. Civ. P. 52; *Adoption of Lybrand*, 329 Ark. 163, 946 S.W.2d 946 (1997); *Adoption of Perkins/Pollnow*, 300 Ark. 390, 779 S.W.2d 531 (1989); *Jones v. Ellison*, 70 Ark. App. 162, 15 S.W.3d 710 (2000). When minor children are involved, a heavier burden is placed on the court to exercise all its powers of perception in viewing the witnesses and their testimony when determining the best interest of the children. *In the Matter of the Adoption of J.L.T.*, 31 Ark. App. 85, 788 S.W.2d 494 (1990). Furthermore, adoption statutes are strictly construed. *Adoption of Lybrand, supra.*

Appellee does not appeal the probate court's finding that appellee's consent was not required under Ark. Code Ann. § 9-9-207(a)(2)(Repl. 1998). Thus, we do not address the issue of appellee's consent.[2] However, it is not mandatory for a court to grant an

---

[1] Arkansas Code Annotated section 9-9-209(b)(2) provides, in pertinent part, that "the consent shall state that the person has the right of withdrawal of consent. . . ."

[2] Arkansas Code Annotated section 9-9-214(c) provides:

If at the conclusion of the hearing the court determines that the required consents have been obtained or excused and the required period for the withdrawal of consent and withdrawal of relinquishment have passed and that the adoption is in the best interest of the individual to be adopted, it may (1) issue a final decree of adoption. . . .

The language of section 9-9-207(a)(2) which the probate judge relied on, provides:

(a) Consent to adoption is not required of:

. . .

(2) a parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate

adoption merely because an individual has forfeited his right to require his consent as a condition precedent to the adoption. Before granting an adoption, the probate court must find that the adoption is in the best interest of the child by clear and convincing evidence. *Manuel v. McCorkle*, 24 Ark. App. 92, 749 S.W.2d 341 (1988).

Appellant's sole contention for reversal is that the probate court should have granted the adoption, and the court's failure to do so was not in the best interest of the children. In support of this contention, appellant directs the court's attention to the testimony of Kathy Nauman, L.C.S.W., and the Adoptive Home Study report prepared by her. Nauman's testimony and report recommended, without reservation, that appellant adopt the twins because appellant "is really the only 'father' they have known and they readily accept him in that role."

Appellee testified that from the time he and Sarah Apel were separated in August 1997 until the final divorce in April of 1998, he did not see the twins. In fact, he admitted that his last visitation was half of a day on April 1, 1998, the date the final divorce was granted to Sarah. He did not see the children again until the day of the adoption hearing, some two years and five months later. Also, appellee admitted his failure to make any arrangements to see the children from the date of the divorce until June of 1999. He does, however, assert that he did send the twins birthday cards and a photograph of himself exhibiting a deer that he had killed. Likewise, appellee testified that he called the children about once per month but was not always able to talk to the children or their mother.

Appellee acknowledged his failure to pay his share of the court-ordered health insurance premiums and medical bills for the children after the bills were presented to him by the children's mother. Instead, he asserts that he paid some money for doctors' bills and insurance premiums before he signed the consent to adoption but did not pay for either thereafter. He admits that his main concern, when he signed the consent, was that he would no longer be financially obligated to support the children and he was "more than happy" for appellant to take over the financial responsibility of his two children. He confirmed that he stopped paying child support after signing the first consent to adoption and stated that he

with the child or (ii) to provide for the care and support of the child as required by law or judicial decree.

had, in his opinion, given up his rights to the children and was no longer their father.

In December 1999, when appellee received the second consent explaining that an inadvertent error required execution of a second consent, he withdrew his first consent and objected to the adoption. He acknowledged that had there not been an error in the first consent form, he would not have made an effort to withdraw his consent.

Testimony of Sarah Apel, the mother of the children, regarding appellee's contact with the children mirrored that given by appellee. She stated that appellee had not visited the children from the time they were separated until the day the divorce was granted. She further testified that since the time she and appellant married, the twins have lived with her and appellant in their home and that he has provided the "main financial" support and the stability of a home for them. She stated that appellee had been given her phone number and addresses; however, when appellee would call, he would rarely ask to speak to the children. Sarah Apel maintained that appellee never asked the children to come and visit him in Indiana where he lived and that he had not visited the children in Arkansas even though she told him that he would be welcome in her home anytime he wished to visit the children. She specified that appellee had made only one attempt to see his children since December of 1999, the date he filed his contest to the adoption. However, he never showed up for the weekend visit he planned in January 2000.

Sarah Apel confirmed that although appellee had fallen behind on his child support payments at times, he would sometimes send double payments to get caught up with the amount past due. She testified that she did not offer to financially assist appellee with visitation because she felt no obligation to do so.

Appellant testified that from the time he and Sarah Apel were married, the twins lived with them. He noted that he and Sarah have a son together and stated that the twins are like his "own children" and they call him "Daddy." Further, appellant asserted that he understood and accepted the legal responsibilities involved in adopting the twins.

The law will favor a natural parent over all others if all things are equal. *Manuel v. McCorkle*, 24 Ark. App. 92, 749 S.W.2d 341 (1988). Further, this court has recognized that "temporal and

material betterments are not conclusive" to determine the best interest of the child and "consideration must also be given to the fostering of moral, cultural, and spiritual values as well as family. relationships." *Id.* at 98. "Best interest does not necessarily mean a higher station in life, and those parents who support their child in their own style of life, however poor or humble, should not be deprived of parental privileges except under compelling circumstances." *Id.* (citing *Bush v. Dietz*, 284 Ark. 191, 680 S.W.2d 704 (1984)). As *Manuel* notes, however, this rule is premised on the presumption that the natural parent is providing care and support for the children to the best of his abilities, regardless of how meager those abilities may be.

██ ██ Parental rights are not proprietary ones and are subject to the performance of duties and obligations of a parent to care for and support a child, and the law only protects the rights of parents so long as the parent discharges these duties. *Manuel,* 24 Ark. App. at 98–99. The preference for natural parents should not be continued beyond the point where these duties and obligations have been ignored or shifted to others. *Id.* at 99 (citing *Watkins v. Dudgeon*, 270 Ark. 516, 606 S.W.2d 78 (Ark. App. 1980)). *See also Pender v. McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979).

> It has been stated that this preference for the natural parents is based on the presumption that they will take care of their children, bring them up properly, and treat them with kindness and affection, but when that presumption has been dissipated the courts will interfere and place the child where those duties will be discharged by someone more willing and able to do so.

*Manuel,* 24 Ark. App. at 99, 749 S.W.2d at 343 (citing *Loveless v. May,* 278 Ark. 127, 644 S.W.2d 261 (1983); *Brown v. Johnson,* 10 Ark. App. 110, 661 S.W.2d 443 (1983).

As father of these two children, now five years old, appellee has done little more than reluctantly send court-ordered child-support payments and insurance premiums since the time of his divorce from their mother. Although the testimony reflects that he has phoned the mother since the time of the divorce, the evidence indisputably shows that from April 1, 1998, until September 14, 2000, appellee had not seen his children and had made little or no effort to do so. Other than reluctantly paying the court-ordered child support, appellee has ignored his parental duties and has shifted the duties of being a parent onto appellant. It has been

appellant who has fulfilled the role of father to the twins by providing them not only financial support but also a family life and a home.

 Appellee essentially abandoned the children for more than three years, content to have appellant assume his parental duties. Therefore, we cannot say that it was in the best interest of the twins for the adoption to be denied. Thus, we reverse.

Reversed and remanded for entry of an order granting the adoption.

VAUGHT and BAKER, JJ., agree.