IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 6, 2005 Session

## AT&T CORPORATION, NETWORK SYSTEMS DIVISION v. LOREN CHUMLEY, COMMISSIONER OF REVENUE, STATE OF TENNESSEE

Appeal from the Chancery Court for Davidson County
No. 02-2145-III     Ellen Hobbs Lyle, Chancellor

No. M2004-01514-COA-R3-CV - Filed October 21, 2005

AT&T sued the Commissioner of Revenue of Tennessee to recover sales tax paid on central office equipment for the years 1995 and 1996 asserting that the equipment qualifies for exemption as industrial machinery. Determining that the outcome of the case was controlled by *AT&T v. Johnson*, 2002 WL 3124708 (Tenn.Ct.App.2002), the Chancellor held that the industrial machinery exemption was not applicable. We affirm the judgment of the Chancellor.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, J., joined.

Larry D. Crabtree, Steven C. Douse, Nashville, Tennessee, for the appellant, AT&T Corporation – Network Systems Division.

Paul G. Summers, Attorney General and Reporter; Joseph F. Whalen, Associate Solicitor General; Stephen Nunn, Sr. Counsel, for the appellee, Loren Chumley, Commissioner of Revenue, State of Tennessee.

### OPINION

Since we are reviewing the action of the trial court in a Tennessee Rule of Civil Procedure 12.02(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted, the facts as alleged in the amended Complaint must be conclusively accepted as being true. *Holloway v. Putnam County*, 534 S.W.2d 292, 296 (Tenn.1976); *Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn.Ct.App.1992).

The facts as alleged in the amended Complaint are:

4. AT&T is a telecommunications company that, among other things, provides telecommunications services to its customers. AT&T's former Network Services Division manufactured central office equipment for sale to other AT&T divisions or related entities and to third-party customers, from whom it collected such sales taxes as it believed were due at the time. Each of the other AT&T divisions or related entities and the third-party customers was a telecommunications company, and each one's use of the central office equipment qualified it for Tennessee's industrial machinery exemption.

5. Telecommunications companies use central office equipment with their networks to fabricate and process telecommunications signals. The telecommunications signals are the personal property of the telecommunications companies, the use of which is sold to consumers for consumption off the premises of the telecommunications companies. The consumers use the telecommunications signals at their homes, businesses, or other locations to communicate with other parties.

6. The telecommunications company creates the telecommunications signal and makes it available for use by its customers. A user's spoken words are picked up as audio waves by the telephone's microphone diaphragm, and the audio waves are measured and converted into an analog, electrical impulse signal. That analog telecommunications signal is measured and converted into a digital, electrical impulse signal. That digital, electrical telecommunications signal is again measured and converted into a digital, light-wave impulse for transmission of the signal over fiber optic cables. At the other end, the measurement and conversion process is reversed to reproduce the original audio wave communication to permit the receiving listener to hear an accurate reproduction of the speaker's original words.

7. The customer accesses the signal provided by the telecommunications company by picking up the telephone receiver and dialing a phone number. This now reconfigured signal travels to the telecommunications company's central office. There, the telecommunications company routes each customer's signal through the central office equipment and measures each incoming signal through a "sampling" process using an electronic scanner that takes a portion of each customer's signal and bundles it with multiple samplings of other customers' signals for transmission over a common line to the appropriate destination. In this process, the telecommunications company samples the amplitude of each incoming signal, encodes that sample, switches and transmits multiple bundled samples to the appropriate output line or another central office, un-bundles and decodes the samples, switches each decoded signal to the proper output line or trunk, and transmits the signal to the intended recipient of each call. The telecommunications signal is both "measured" during this process and is "perceptible to the senses" when the end party "perceives" the signal as the caller's spoken words.

8. During the entire process, the telecommunications company maintains continuous supervision and control over the telecommunications signal and furnishes an operator or crew to operate the signal to ensure that it is properly transmitted and not interrupted by a break. The monitoring, supervision, control, and operation of the telecommunications signal is maintained and occurs on a continuous basis through personnel either at the central office or at the global network operations center. Because the telecommunications company retains complete control over the telecommunications signal, it provides and sells the use of the signal in the form of a service. That telecommunications service is inextricably intertwined with the telecommunications signal, because without the sale of use of the signal, the service cannot be provided. More simply put, no signal, no service. The expression "interrupted service" really means "interrupted signal," the total control of which remains with the telecommunications company.

The Amended Complaint of AT&T was met with a Tennessee Rule of Civil Procedure 12.02(6) Motion to Dismiss for failure to state a claim upon which relief can be granted, such Motion asserting:

Defendant Commissioner of Revenue moves the Court pursuant to T.R.C.P. 12.02(6) to dismiss the instant complaint against her for failure to state a claim upon which relief can be granted. Such a ruling is appropriate because the claim of plaintiff AT&T — Network Systems Division for refunds of sales and use taxes allegedly paid by it for the period January 1, 1995 through January 31, 1996, is based on its contention that telephone central office machinery and equipment is exempt from Tennessee sales and use taxes as industrial machinery in accordance with T.C.A. §§ 67-6-102(13)(A), 67-6-102(13)(D)(i), and 67-6-206(a). This contention, however, was definitively rejected and determined to be contrary to Tennessee law by the recent decision in *AT&T Corp. v. Johnson*, 2002 WL 31247083 (Tenn.Ct.App., Oct. 8, 2002), *perm. app. denied* (Tenn., Feb. 24, 2003).

Because it has now been authoritatively determined that telephone central office equipment and machinery does not qualify as "industrial machinery" under the Tennessee tax code, and that such items are not exempt from sales and use taxes, the sole basis upon which plaintiff asserts that it is entitled to relief in this case is obviously without merit. Moreover, plaintiff in the instant cause is the same party as the plaintiff in *AT&T Corp. v. Johnson, supra,* and the doctrine of collateral estoppel operates to bar plaintiff's attempt to relitigate this issue.

Thus, an order dismissing the complaint should be entered in favor of the Commissioner of Revenue, denying plaintiff's claims for refunds, dismissing its complaint, and awarding attorneys' fees and expenses of litigation to the Commissioner as the prevailing party as required by T.C.A. § 67-1-1803(d).

On April 30, 2004, the Chancellor entered final judgment sustaining the Motion to Dismiss holding:

> 1. The Court finds *AT&T Corp. v. Johnson*, 2002 WL 31247083 (Tenn.Ct.App. October 8, 2002), *perm. app. denied*, to be directly applicable precedential authority in this case. Regardless of whether Plaintiff's telecommunications are accomplished by means of signals, and regardless of whether those signals are tangible personal property for purposes of the industrial machinery tax exemption, the Court finds that what is really being sold by Plaintiff is a service, telecommunications, as defined in Tenn. Code Ann. §§ 67-6-102(32) and 67-6-102(25)(F)(iii). The Court further finds that the decision in *Freedom Broadcasting of TN v. Tennessee Department of Revenue*, 83 S.W.2d 776, (Tenn.Ct.App. 2002), is distinguishable from the case at bar, because the broadcast television signals at issue there were specifically excluded from the definitional language of Tenn.Code Ann. § 67-6-102(30)(D) [now Tenn.Code Ann. § 67-6-102(30)(D)].

AT&T filed a timely appeal.

The only issue on appeal stated by AT&T is "whether telephone central office equipment qualifies for the industrial machinery exemption from Tennessee sales and use taxes."

A brief history of the continuing efforts of AT&T to claim this industrial machinery exception for its central office equipment is in order.

AT&T, represented by the Honorable Gregory G. Fletcher of Memphis, litigated the same issue in the same Chancery Court at Nashville for the years 1990 through 1994 resulting in a holding by the Chancellor that the central office equipment of AT&T did not qualify for the industrial machinery exemption from sales and use tax. While that case was on appeal, AT&T, represented by the same attorney, filed the Complaint in the present case seeking refund of sales and use tax for 1995 and 1996 claiming the same industrial machinery exemption. This Complaint was filed July 18, 2002.

On October 3, 2002, the Commissioner filed a Motion to Hold This Case in Abeyance pending appellate decisions in the case involving the tax years 1990 through 1994. No formal action appears to have been taken by the trial court on this Motion, but five (5) days later on October 8, 2002, this Court issued its opinion in *AT&T Corp. v. Ruth Johnson, Commissioner of Revenue, State of Tennessee*, No. M2000-01407-COA-R3-CV, 2002 WL 31247083 (October 8, 2002). This Court affirmed the Chancellor's finding that the industrial machinery exemption was not available to AT&T.

On February 24, 2003, the Supreme Court issued an Order Denying the Application for Permission to Appeal in *AT&T Corp. v. Johnson* and issued its mandate on March 10, 2003. On April 15, 2003, the trial court entered an order providing in pertinent part:

Proceedings in this case have been held in abeyance pending the outcome of the AT&T case. The parties now are in agreement that additional time is needed to assess the impact of that decision on this case. Therefore, the time within which defendant may file and serve an answer is extended by thirty (30) days, up to and including May 9, 2003.

On June 9, 2003, the Commissioner filed her answer in the case at bar asserting among other things that the case was controlled by the decision in *AT&T Corp. v. Johnson*.

On September 11, 2003, Honorable Gregory G. Fletcher withdrew as counsel for AT&T and was replaced by Honorable Larry D. Crabtree, Honorable Steven C. Douse and Honorable R. Christopher Lowe of Nashville. On November 17, 2003, Commissioner filed a Motion for Judgment on the Pleadings based upon the decision of this Court in *AT&T Corp. v. Johnson*. On February 6, 2004, AT&T sought Leave to Amend the Complaint to name Loren Chumley, current Commissioner of Revenue, as defendant and to "clarify the nature of the claim in light of the developments in the law since the case was filed." Leave to File the Amended Complaint was granted, and same was filed on February 6, 2004, asserting the facts previously recited. On February 12, 2004, the Commissioner renewed the Motion for Judgment on the Pleadings, and the trial court, on May 24, 2004, filed its Final Judgment granting the Motion to Dismiss.

A comparison of the original Complaint of July 18, 2002, and the Amended Complaint of February 6, 2004, shows little difference except as to the expansion of the description of the operation of AT&T's telecommunication system.

In advancing its arguments against the Chancellor's finding, AT&T suggests that while engaged in the providing of telecommunications service, its "principle business" for the purpose of the exemption statute is the production of a communications signal. Further, since this signal can be measured in terms of amplitude and is in some way "perceptible to the senses" it qualifies as tangible personal property as that term is defined later in the statute. *See* Tenn.Code Ann. § 67-6-102(a)(27) (1995 supp.). In its Amended Complaint, AT&T goes into great detail in describing the method by which the telephone central office equipment processes the data transmissions and voice transmissions created by the customers who are subscribers to the telecommunications provider network employing the equipment. In this detailed description and in arguments before this Court, AT&T argues that in the telephonic realm, there can be no telecommunications without a signal; there is no data transfer if a signal cannot be generated, transferred, "sampled" and then reconfigured.

At its most basic level, AT&T's equipment disassembles audio or data to a point that it is unrecognizable to the human ear and converts that data to a lightwave impulse for transport through fiber optic cables, and, as close to instantaneous as that equipment can make it, reconstructs the signal, again as closely as technology can approximate, to a form recognizable as the original source or data. When person A speaks, and, in the words of the Complaint, the telephone, which may or may not be owned by the individual does the initial conversion of the voice using the signal available from AT&T's equipment, that very signal is not consumed. That signal simply carries the

information from the microphone along the dedicated electronic pathways until the signal is converted to fiber-optic impulse. Again, the signal is not consumed. Rather, it is transformed to a different type of carrier.

In discussing cable transmissions, the Commonwealth Court of Pennsylvania held:

> Our legal conclusion in *Suburban Cable*, that cable television systems are not entitled to a manufacturing exemption, is binding in this case and determinative on this issue.
>
> Aside from the issue of a tangible versus intangible product, the cable television system does not qualify for the manufacturing exemption because Suburban Cable does not transform any material or thing into something different from that received. The Suburban Cable system primarily consists of video switching equipment, computers, modulators and demodulators, receivers and transmitters, scramblers and descramblers, signal converters, monitor and testing equipment, an antenna, and satellite dishes. (Common Pleas Opinion at p. 2.) Signals originating from several sources are received in signal processing facilities, where they are converted and otherwise processed for cable transmission, (Stipulated Facts Nos. 17 and 18), and assigned to cable channels. Suburban Cable does not give the incoming signals a new identity; rather, it processes the signals and retransmits them in a single package or format. The processing and retransmission do not constitute a substantial transformation in form, qualities, and adaptability in use. Suburban Cable provides a service whereby it delivers to customers the products (i.e., the channels produced by the individual networks, broadcasters, and others.

*Suburban Cable TV v. City of Chester*, 685 A.2d 616, 618 (Pa.Cmmw.Ct. 1996) (footnotes omitted).

In her Memorandum and Order, which was affirmed by this Court in *AT&T Corp. v. Johnson*, the Chancellor held:

> In this regard AT&T argues that electricity is tangible personal property which is sold in the telephone service process. AT&T argues that this is so because electricity is the means that allows transmission of the customer's voice from one location to another.
>
> While it is true that telecommunications is accomplished by means of electricity, the Court determines that what is really being sold by a telephone company is a service – telecommunications. The Court is bolstered in this conclusion by the listing of taxable "services" in Tennessee Code Annotated section 67-6-102(23)(f)(iii) which indicates that telecommunications are services. The Court is further bolstered in this conclusion by the authority cited by the Commissioner from other states: *Golden Triangle Broadcasting Inc. v. Pittsburgh*, 377 A.2d 839

-6-

(1977), affirmed at 397 A.2d 1147 (1979); *Board of Assessors v. Commissioner of Corps[.] & Taxation*, 72 N.E.2d 528 (1947).

AT&T relies primarily on this Court's decision in *Freedom Broadcasting v. Tennessee Dept. of Revenue*, 83 S.W.3d 776 (Tenn.Ct.App. 2002). A detailed comparison between the *Freedom Broadcasting* case and *AT&T v. Johnson*, 2002 WL 3124708 (Tenn.Ct.App.2002) is necessary in order to determine the effect, if any, of *Freedom Broadcasting* on the case at bar. *Freedom Broadcasting* was decided by this Court on January 8, 2002, and an application for permission to appeal was denied by the Supreme Court on June 24, 2002. The memorandum and order of the Chancellor in *AT&T v. Johnson* was filed by the Chancellor on March 25, 1999. The decision of this Court affirming the Chancellor was issued October 8, 2002, with the Supreme Court denying an application to appeal on February 24, 2003.

It is to be noted that the same Chancellor decided both cases with *Freedom Broadcasting* represented by the same counsel presently representing AT&T who was successful in qualifying broadcasting equipment of Freedom Broadcasting as "industrial machinery" under the exemption. AT&T was unsuccessful in qualifying its central office equipment as "industrial machinery" under the exemption provisions of the taxing statute.

In *Freedom Broadcasting*, the administrative law judge had denied the exemption, the Chancellor reversed, and the Department of Revenue appealed. This Court affirmed the Chancellor and upheld the exemption on three separate grounds. First of all, and most important in consideration of the case at bar, the Court held that the signals produced by Freedom Broadcasting were not telecommunications as defined by the governing statute. Said the Court:

> Telecommunications include "transmission by or through any media, such as wires, cables, microwaves, radio waves, light waves, or any combination of those or similar media." Tenn.Code Ann. § 67-6-102(30)(B)(Supp.2001). Finally, the definition of telecommunications does not include "television or radio programs which are broadcast over the airwaves for public consumption." Tenn.Code Ann. § 67-6-102(30)(D)(Supp.2001).
>
> The Department insists, and the ALJ concluded, that these code sections are relevant to determine that the General Assembly considers the output of radio and television broadcasting signals to be a service, not the fabrication or processing of tangible personal property. The Department maintains that these sections illustrate that the legislature deemed the output of broadcast signals to be a service, and these sections function to exempt the service from tax. We are unable to share this interpretation with the Department. Taxpayers' television and radio programming that are carried on Taxpayers' broadcast signals are expressly excluded in section 67-6-102(30)(D) from the definition of telecommunications. The signals are not "telecommunications" as defined in section 67-6-102(30)(B) and, therefore, cannot be "telecommunication services" under [67-6-102(24)(F)(iii)]. No language exists

within these sections to lead one to the conclusion that the legislature considered the output of broadcast signals to be a service, and utilized these sections to exempt that "service" from taxation. The sections only lead to the conclusion that the output of broadcast signals is not a "telecommunication service."

It follows, then, that these sections are irrelevant to the determination of whether Taxpayers equipment fabricates or processes "tangible personal property." We fail to see how the legislature in enacting these statutes foreclosed any finding that broadcasting signals were tangible personal property. We do not believe that the General Assembly intended to broadly declare that broadcasters were engaging in a service and not producing tangible personal property. The language employed in the statutes suggests just the opposite. Therefore, these sections fail to support the Department's assertion that the output of broadcast signals is a service. The ALJ's decision to consult these sections in order to determine whether Taxpayers fabricated or processed tangible personal property constituted an unwarranted exercise of discretion.

*Freedom Broadcasting*, 83 S.W.3d at 782-83.

Since, under Tennessee Code Annotated section 67-6-102(30)(D)(Supp.2001), the definition of "telecommunications" did not specifically include, but rather specifically excluded "television or radio programs which are broadcast over the airwaves for public consumption" from the definition of telecommunications, the Court held that such signals could not be "telecommunications services" under Tennessee Code Annotated 67-6-102(24)(F)(iii).

Relying then on *Texas Eastern Transmission Corp. v. Benson*, 480 S.W.2d 905 (Tenn.1972), the Court held that such signals were "tangible personal property" within the definition of industrial machinery in the exemption statute. (Tenn.Code Ann.§ 67-6-102(13)(Supp.2001)). Next, the Court rejected the Department's argument that Freedom Broadcasting did not fabricate or process the broadcast signals for "resale" as required by Tennessee Code Annotated section 67-6-102(13)(A). Relying on *Nashville Clubhouse Inn v. Johnson*, 27 S.W.3d 542 (Tenn.Ct.App.2000), the Court held that all three elements necessary to constitute a sale (1) the transfer of title or possession or both, (2) of tangible personal property, and (3) for a consideration were present in Freedom Broadcasting's sale of its signal. 83 S.W.3d at 784.

Finally, the Court rejected the Department's assertion that selling broadcast signals was not the taxpayers' principal business as required in the definition of industrial machinery.

While at the time the Chancellor decided *AT&T v. Johnson* in the trial court (March 25, 1999) *Freedom Broadcasting* had not been decided, it is well to note that it had both been decided and application to appeal to the Supreme Court denied three months before this Court's opinion in *AT&T v. Johnson* was filed. No mention of *Freedom Broadcasting* is made in that decision, but on May 24, 2004, when the Chancellor filed her decision in the case at bar following *AT&T v. Johnson*

and denying the industrial machinery tax exemption, she distinguished *Freedom Broadcasting of Tennessee* with the observation:

> The Court further finds that the decision in *Freedom Broadcasting of Tennessee v. Tennessee Dept. of Revenue*, 83 S.W.3d 776 (Tenn.Ct.App.2002), is distinguishable from the case at bar, because the broadcast television signals at issue there were specifically excluded from the definitional language of Tennessee Code Annotated section 67-6-102(30)(D)[now Tenn.Code Ann. § 67-6-102(30)(D)]. [sic]

This distinction observed by the Chancellor is critical to the usefulness of *Freedom Broadcasting*, in determining the question at bar. By the reasoning in *Freedom Broadcasting*, it is this specific statutory exclusion from the definition of 'telecommunications' which took television or radio broadcast programs out of the ambit of "telecommunications." Such broadcasts were therefore not inhibited by the general recognition that "telecommunications" involves a "service." The distinction is made more plain when Tennessee Code Annotated sections 67-6-102(29)(A,B,C and D) are considered together.

> (29)(A) "Telecommunication" means communication by electric or electronic transmission of impulses;
>
> (B) "Telecommunications" includes transmission by or through any media such as wires, cables, microwaves, radio waves, light waves, or any combination of those or similar media;
>
> (C) Except as provided in subdivision (D), "telecommunications" includes, but is not limited to, all types of telecommunication transmissions, such as telephone service, telegraph service, telephone service sold by hotels or motels to their customers or to others, telephone service sold by colleges and universities to their student or to others, telephone service sold by hospitals to their patients or to others, WATS service, paging service, and cable television service sold to customers or to others by hotels or motels;
>
> (D) "Telecommunications" does not include public pay telephone services, television or radio programs which are broadcast over the airwaves for public consumption, coaxial cable television (CATV) which is offered for public consumption, interstate WATS service, private line service, or automatic teller machine (ATM) service, wire transfer or other services provided by any corporation defined as a financial institution under § 67-4-804(a)(9), unless the company separately bills or charges its customer for specific telecommunication services rendered;

*Freedom Broadcasting* had held that radio and television signals were not "telecommunications" and thus could not be "telecommunications services" but were in fact "tangible personal property" under then existing Tennessee Code Annotated section 67-6-102(29). The result of *Freedom Broadcasting* was apparently not acceptable to the legislature as the ink was barely dry on that decision before legislative intervention occurred by the enactment of Chapter 357

of the Public Acts of 2003. Section 14 of Chapter 357 now codified as part of Tennessee Code Annotated section 67-6-102(34) provides "'tangible personal property' does not include signals broadcast over the airwaves." While this subsequent legislative change does not destroy *Freedom Broadcasting*, it appears to effectively limit its application after the effective date of Chapter 357 of the Public Acts of 2003 (July 1, 2004). The difficulty in relating *Freedom Broadcasting* to the case at bar is that the kind of exclusionary language which removed radio and television signals from the definition of "telecommunications" and thus qualified such signals as "tangible personal property" never existed as to the AT&T central office equipment or signals as were in issue in *AT&T v. Johnson* or as are in issue in the case at bar.

Efforts to distinguish between "electricity" as in the previous *AT&T v. Johnson* case and "signals" as asserted in this case makes a distinction without a difference, at least insofar as this tax exemption is concerned.

> Telephone service is provided essentially by electrical signals passing through conductive lines to the customers' telephones. Electrical current flows from the telephone company's central office to the customer's telephone, and then back to the central office. The electricity that flows through the telephone lines serves no useful purpose other than as a medium of telecommunication.

*AT&T Corp. v. Johnson*, 2002 WL 3124708 at *3.

The Tennessee Supreme Court has held:

> The general theme of all of these cases is that when the primary function and purpose of the taxpayer is to provide services, the ownership, use and maintenance of certain types of personal property and equipment are necessary in order to enable it to furnish the services, so that the taxpayer, not its customer, is the ultimate user or consumer within the meaning of sales and use tax statutes. The only authorities to the contrary cited by appellant deal with the sale of meals by universities or airlines to students or passengers, and even in this area there is disagreement among the cases.

*Nashville Mobilphone co., Inc. v. Woods*, 655 S.W.2d 934, 937 (Tenn.1983).

As the Chancellor was correct in holding that *AT&T v. Johnson*, 2002 WL 3124708 (Tenn.Ct.App.2002) is controlling authority in this case, judgment on the pleadings in favor of the defendant is in all respects affirmed, and the case is remanded to the trial court for such further proceedings as may be necessary.

Costs of the cause are assessed to the appellant, AT&T Corporation – Network Systems Division.

_____
WILLIAM B. CAIN, JUDGE