Tisha Pauline SILL  *v.*  Charles Bradley SILL

CA 05-703                                          228 S.W.3d 538

Court of Appeals of Arkansas
Opinion delivered February 15, 2006

*Matthews, Campbell, Rhoads, McClure, Thompson & Fryauf, P.A.*, by: *Mark T. Fryauf, Williams Law Firm*, by: *Kevin Bonner*, and *Linda Hamilton*, for appellant.

*Kevin Carl Bonner*, for appellee.

WENDELL L. GRIFFEN, Judge. Tisha Sill appeals from an order denying her petition to relocate and requiring her to move back to Arkansas from Oklahoma. She argues that the trial court "denied" her the presumption favoring relocation, failed to properly apply the relocation factors, and denied her petition to relocate in order to punish her for failing to comply with its previous orders. We disagree, hold that the trial court's decision is not clearly erroneous, and affirm.

## I. Factual and Procedural History

Tisha and appellee Charles Sill were divorced in August 2003. Two children were born of their marriage: Mackenzie, d.o.b., October 4, 1996, and Keely, d.o.b., February 15, 2002. Tisha and Charles are both originally from Miami, Oklahoma.

Tisha lived in Rogers, Arkansas when she filed her petition to relocate; Charles lived in nearby Bentonville, Arkansas (approximately thirty miles from Rogers). Miami, Oklahoma, is located approximately one hour and fifteen minutes from the Bentonville area by automobile. Both Tisha and Charles have extended family in the Miami area; neither has extended family in Arkansas.

On July 22, 2004, Charles and Tisha were arrested for domestic battery relating to an altercation between them that occurred at Tisha's home, in front of the children. Charles thereafter filed a petition for an emergency hearing alleging that he had been denied part of his summer visitation with the children; this motion was apparently denied. Tisha countered with a petition to modify the visitation to provide for the exchange of the children to occur at a neutral site; her motion was granted on August 3, 2004.

Shortly thereafter, on August 13, 2004, Tisha filed a petition to relocate to Miami. She then relocated before the court ruled on her motion. Tisha alleged in her petition to relocate that she had obtained employment with the Miami Public School District beginning in August 2004; that she and Charles had extensive family in the Miami area; that the parties could arrange additional time for Charles's visitation so that he would not lose any visitation as a result of the relocation; and that during those times when Charles's work requires him to travel, his visitation could be exercised by his relatives, thus fostering a stronger relationship between the children and Charles's extended family. For these reasons, Tisha asserted that it was in the children's best interest for her to relocate to Miami.

In response, Charles filed a motion to modify custody and a motion for contempt, based on Tisha's failure to pay marital debt and insurance premiums as ordered in the parties' divorce decree. The trial court entered a temporary order modifying the visitation and transportation schedule in light of Tisha's relocation. Because Charles could not exercise his mid-week visitation after the move, the trial court authorized his parents, who lived near Tisha, to exercise a mid-week visitation.

The hearing on the motions was held on January 11, 2005. Tisha testified that in May 2004, she began seeking a job closer to her family because she wanted her family's moral and financial support for herself and her daughters. She also testified that she and the girls often spent weekends and holidays in Miami. She maintained that it was "easier" to be near her extended family.

Tisha is a teacher, who, at the time she filed the petition to relocate, was earning approximately $40,000 per year as a teacher in the Rogers School District; she admitted that the teaching job in Oklahoma paid only $29,000 annually. However, she claimed that the cost of living in Miami was 30%–40% lower and cited as proof the fact that she paid approximately $200 per month less in rent in Miami than in Rogers and that she thought gasoline was cheaper in Miami.

Tisha also testified that she had not paid the marital debt as ordered because she did not have the money to do so. When asked why she accepted a job paying approximately $12,000 less per year when she could not pay her marital debts due to financial difficulties, she responded, "Because money is no option when it comes to my children."

Because Charles does not cross-appeal from the trial court's denial of his petition to modify custody, and because Tisha does not appeal from the trial court's contempt findings, it is not necessary to recount in great detail the testimony or findings concerning custody or visitation. It is sufficient to recount that the trial court found that neither parent had acted in an exemplary manner, that Tisha's testimony was not credible in some respects, and that she was in contempt because she had arbitrarily altered or denied visitation to Charles.

Finding that Charles had rebutted the presumption in favor of relocation, the trial court denied Tisha's petition to relocate and ordered her to move back to Arkansas. The court concluded that Tisha

> is not doing one thing to encourage or better the relationship with the children and their father and frankly, from watching her testify and watching the demeanor of the parties and witnesses on the stand, I am of the belief that she moved to Miami and changed jobs for the sole purpose of making it difficult for [Charles] to have contact with his children. She has not bettered her financial situation in the least. She gave up probably $12,000 a year in income to do it.

(Emphasis added.)

The court determined that Tisha relocated "for the sole purpose of thwarting [Charles's] visitation with the minor children" and further determined that Charles had been "robbed" of any opportunity to have lunch with his daughters or participate in

extracurricular activities. It stated: "I see absolutely no good reason why [Tisha] moved away from here except to impose that burden on him and attempt to alienate his children from him."

With regard to the best interests of the children, the trial court stated:

> Frankly, she is in contempt for interfering with visits. She has interfered with the relationship. The problem is trying to decide what is in the best interest of these two little girls, and that is where I am having the biggest problem is trying to decide if I can force [Tisha], because that is what it is going to take, to comply with the court orders without taking the kids out of the home.

The court concluded that the relocation would be more detrimental to MacKenzie than having her "remain" in Arkansas and found that relocation to Miami was not in the best interest of the children.

The trial court found Tisha in contempt for her failure to pay marital debt and insurance premiums. However, it denied Charles's petition to modify custody, finding that although a material change of circumstances occurred because Tisha violated the trial court's orders regarding visitation, it was in the children's best interests for custody to remain with her. The court authorized Charles's parents to continue mid-week visitation until Tisha moved back to Arkansas. Tisha has since moved back to Arkansas with her daughters.

## II. Hollandsworth Factors

Tisha now challenges only the denial of her petition to relocate, arguing that the trial court denied her the presumption in favor of relocation, that it failed to apply all of the relocation factors, that it erred in determining that the presumption in favor of relocation had been rebutted, and that it denied her petition to relocate to punish her for failing to comply with its orders.

We review the denial of a petition to relocate *de novo* but will not reverse the trial court's findings unless they are clearly erroneous. *Parker v. Parker*, 75 Ark. App. 90, 55 S.W.3d 773 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake was committed. *Id.* Because none of Tisha's arguments leave us with a definite and firm conviction that the trial court made a mistake, we affirm.

The factors a trial court must consider when determining whether to grant a petition to relocate were set out in *Hollandsworth v. Knyzewski*, 353 Ark. 470, 190 S.W.3d 653 (2003). These factors include: (1) the reason for relocating; (2) the educational, health, and leisure opportunities available in the new location; (3) the effect of the move on the visitation and communication schedule of the noncustodial parent; (4) the effect of move on extended-family relationships in Arkansas and the new location; (5) the children's preferences, considering the ages and maturity level of the children and the reasons given for the preference. *Id.* Even when these factors are considered, the polestar interest remains whether it has been established by a preponderance of the evidence that a proposed relocation would serve the child's best interests. *Id.* A presumption exists in favor of relocation for custodial parents with primary custody, with the burden being on a noncustodial parent to rebut the presumption. Therefore, a custodial parent is not required to prove a real advantage to herself or himself and to the children in relocating. *Id.*

Before applying the *Hollandsworth* factors to the instant case, we first consider Tisha's argument that she was "denied" the benefit of the presumption favoring relocation. She argues that she was denied the presumption because "the trial court summarily found that Mr. Sill had overcome the presumption in favor of relocation without applying the presumption standard in light of the factors to be considered." In other words, she contends that she was denied the benefit of that presumption because the trial court found that Charles rebutted the presumption.

█ However, nothing in the record leads us to conclude that the trial court failed to apply the presumption in favor of relocation that was established by the holding in *Hollandsworth*. Granted, the trial court observed that Tisha "has not bettered her financial situation in the least;" yet when this comment is viewed alongside the court's other findings and comments it is clear that the court did not fail to apply the presumption. Rather, the trial court determined that the presumption had been rebutted. In fact, the trial judge made a specific finding that the presumption had been rebutted in her written order.

█ Further, consideration of the *Hollandsworth* factors supports the trial court's determination that the presumption favoring relocation was rebutted. We first address the factors on which the trial court relied to the greatest extent.

## A. Effect of Relocation on the Non-Custodial Parent

Clearly, the predominant factor in the trial court's decision was the effect of the relocation on Charles's visitation and communication schedule. After Tisha moved, the visitation schedule was modified to allow Charles's parents to exercise mid-week visitation because Charles was unable to exercise that visitation. Charles's visitation was also expanded to allow for the additional driving time required to transport the children a greater distance. Charles and his parents testified regarding Tisha's actions in thwarting visitation with him and them; Charles also testified regarding his inability to participate in mid-week activities, such as having lunch with the girls at school or at day care.

Tisha maintains that because the overall time that Charles would spend with the children would not be lessened by the relocation, the modification order adequately balanced Charles's visitation rights with her right to relocate. *Blivin v. Weber*, 354 Ark. 483, 126 S.W.3d 351 (2003). She further asserts that the distance between Miami and Bentonville is minimal compared with the distances in other cases in which the appellate courts have approved of the noncustodial parent's relocation. *See, e.g., Hollandsworth, supra* (approving relocation of a distance of 500 miles).

Her arguments are unpersuasive. First, *Blivin* is inapposite because there was no finding in that case that the custodial parent deliberately thwarted visitation with the noncustodial parent. By contrast, the issue for the trial court in the instant case was not the quantity of visitation that was feasible if the relocation petition was granted, but whether Tisha desired to move as part of her ongoing effort to interfere with Charles's visitation. Pursuant to the modified visitation made necessary by the relocation, the court concluded that Charles had been "robbed" of any opportunity to see his daughters during the week and that the reason Tisha moved was "to impose that burden on him and attempt to alienate his children from him." Accordingly, the court did not agree that the effect of the relocation on Charles's visitation schedule was minimal and that his visitation rights would be adequately preserved. Based on our *de novo* review of the record, we agree with the trial court's conclusion that the this *Hollandsworth* factor weighs in favor of rebutting the presumption in favor of relocation.

## B. Reason for Relocation

Second, even though our courts have approved relocations of even greater distances than the distance involved in this case, the

court determined that the reasons Tisha cited for relocating were, in essence, pretextual, and that the real reason she wanted to move was to further thwart Charles's visitation. The reasons cited by Tisha were that: 1) she and Charles were from Miami, they both had extended family there, and the girls had spent a lot of time there; 2) Tisha desired the financial and moral support of her family; 3) the cost of living was 30-40% lower in Miami; 4) the girls were faring well in Miami; 5) Tisha's parents have a good relationship with the girls and with Charles's parents, and Charles's parents exercised mid-week visitation when it was granted to them. Given that Tisha did not challenge the trial court's finding that she deliberately thwarted Charles's visitation, she has little ground to argue that this factor weighs in her favor.

Moreover, while Tisha was not required to present evidence that the relocation offered an advantage to the family unit in order to receive the benefit of the presumption in favor of relocation, we cannot ignore that her own testimony regarding her pay cut and the alleged cost of living weighs in favor of the trial court's finding that the presumption had been rebutted. While Tisha paid $200 per month less for rent in Miami (a decrease of 25%), thus saving her $2400 per year in rent, she nonetheless exposed herself and her children to a net income loss of $9600 due to her pay cut (the net sum of the $12,000 pay cut minus $2400). Her assertion that money is not an option when it comes to her children is unpersuasive given her testimony that she did not have enough money while earning a *greater* income to pay debts that the court ordered her to pay before she petitioned to relocate. Logic dictates that a person does not move from one place to another *citing the need for financial assistance* when the *move itself* would *increase* the need for financial assistance.

Further, it is contradictory that Tisha would be unable to receive moral or financial support from her family if she lived in Arkansas when she asserted that she and the girls visited them often before they moved to Miami. The presumption in favor of relocating does not exist merely to make it easier for the custodial parent to receive moral or financial support from her family, irrespective of the *actual* effect of the move on the children. In any event, requiring Tisha and the girls to remain in Arkansas will not deprive them of any needed moral or financial support — Tisha's family may assist them financially and morally wherever they may

live.[1] These facts cited above, in addition to the trial court's conclusion that Tisha deliberately thwarted visitation, support the trial court's conclusion that Tisha's true reason for relocating was to further thwart Charles's. visitation. As such, we agree that appellant's reason for relocating weighs in favor of rebutting the presumption favoring relocation.

## C. Effect of Relocation on Extended Family Relationships

The remaining reasons for relocating cited by Tisha go to another factor, the effect of the relocation on extended-family relations. According to the testimony, no extended-family members reside in Arkansas, whereas in Miami the girls would have access to extended family on both sides of their family. Further, it appears that both the maternal and paternal grandparents were regularly involved with Mackenzie and Keely while the girls were in Miami. However, Tisha testified that she and the girls often visited relatives in Miami. Thus, relocation would not afford the girls the opportunity to become acquainted with family members they did not know; nor would remaining in Arkansas deprive the girls of the opportunity to continue their relationship with their extended families.

## D. Remaining Hollandsworth Factors

The remaining factors, the educational, health, and leisure opportunities available in Miami and the preferences of the children, were not relied on by the trial court, presumably because little or no evidence was offered concerning those factors. The only evidence regarding the opportunities available in Miami seems to be that Mackenzie played soccer and was enrolled in school at Miami and that Keely was enrolled in day care, but there was no evidence that Mackenzie could not play soccer in Rogers, that the Miami school offered greater educational opportunities than the Rogers schools, or that Mackenzie or Keely otherwise fared better in Miami. The trial court made no specific finding regarding this factor and both parties concede that either Arkansas or Oklahoma would provide sufficient opportunities for the chil-

---

[1] It is difficult to comprehend how the distance to Miami was not so great that it would not significantly disrupt Charles's visitation with the girls, as Tisha asserts, yet, at the same time, could be significant enough to prevent Tisha from receiving the financial or moral support from her family that she desired, as she also asserts.

dren. Thus, this factor does not weigh in favor or against rebuttal of the presumption. Finally, neither child testified, so no evidence was obtained regarding the last *Hollandsworth* factor, the children's preference as to where they live.

It is true, as Tisha asserts, that the trial court did not discuss each of these factors in its oral findings or its written order. However, the trial court is not required to make specific findings with regard to each factor, unless specifically requested to do so. *See* Ark. R. Civ. P. 52(a). Tisha failed to make a request for specific findings; thus, she cannot now argue that the trial court somehow erred in failing to specifically discuss each *Hollandsworth* factor. For the foregoing reasons, we hold that the trial court properly applied the *Hollandsworth* factors and did not err when it determined that the presumption in favor of relocation had been rebutted.

### III. Best Interests of the Children

We further hold that the trial court did not clearly err in determining that it was in the children's best interests to live in Arkansas. Tisha asserts that the court did not explain why it found that it would not be in the children's best interests to relocate. She maintains that there was no evidence that the children's best interests were not satisfied by the relocation to Oklahoma and that, to the contrary, the relocation caused only a slight disruption in Charles's visitation. She attempts to superimpose the presumption that relocation offers an advantage to the family unit atop the best-interest determination — that is, she seems to assert that because it is presumed that relocation offers a real advantage, it is also presumed that relocation is in the best interests of the children, regardless of the actual effect of the relocation on the children.

Rather, a trial court is to exercise all its powers of perception in viewing the witnesses and their testimony when determining the best interest of the children. *Apel v. Cummings*, 76 Ark. App. 93, 61 S.W.3d 214 (2001). Further, the court may consider the custodial parent's interference with the noncustodial parent's visitation when determining the best interests of the child. *Turner v. Benson*, 59 Ark. App. 108, 953 S.W.2d 596 (1997).

In this regard, the trial judge stated:

> Frankly, [Tisha] is in contempt for interfering with visits. She has interfered with the relationship. The problem is trying to decide what is in the best interest of these two little girls, and that is where

> I am having the biggest problem is trying to decide if I can force [Tisha], because that is what it is going to take, to comply with the court orders without taking the kids out of the home.

The judge further determined that the relocation would be more detrimental to MacKenzie than having her remain where she was and stated that relocation to Miami was not in the best interest of the children. Perhaps the trial judge's findings regarding the best interests of the children might have been more clearly stated, but we find no error because the same facts that support holding that the relocation presumption was rebutted also support the conclusion that relocation was not in the best interest of the children.

It is true that the trial court could have granted Tisha's request to relocate even though she violated prior visitation orders. *Friedrich v. Bevies*, 69 Ark. App. 56, 9 S.W.3d 556 (2000) (finding the custodial mother was entitled to move to another state, despite her prior failure to comply with visitation orders and the parties' problems with visitation, where she obtained new employment in the other state, where her salary increased from $32,000 to $55,000 per year, where her new job did not require travel and work on Saturdays as her old job had, and where the trial court was convinced that she would cooperate with her former husband regarding visitation). However, unlike the situation in *Friedrich*, here, the financial effects of the move would be detrimental to the children. Further, the trial court in *Friedrich* was convinced that the custodial parent would cooperate regarding visitation. To the contrary, based on Tisha's prior conduct, the trial court here was convinced that Tisha would continue to interfere with Charles's visitation if the girls lived in Miami. Neither the trial court nor this court is required to afford her that opportunity. Moreover, on this record, we are not inclined to ignore, let alone dispute, the accuracy of the trial court's observations and assessments concerning Tisha's motives for relocating.

While Tisha relies heavily on the fact that the girls would see their extended families to a greater extent if they lived in Miami than if they lived in Rogers, spending time with one's extended family is *not* a substitute for visitation with one's parent. The girls were certainly not deprived of a relationship with Tisha's extended family before they moved to Oklahoma and there was no evidence that they would be deprived of those relationships when they returned to Arkansas. However, they *had been* deprived of their relationship with their father while they lived in Oklahoma. On

those facts, the trial court did not err in concluding that the relocation was not in the children's best interest.

Unlike the dissent, we do not ignore the trial court's prior finding that the custodial parent in the case relocated "for the sole purpose of thwarting [appellee's] visitation with his children." Nor do we ignore the weight of the testimony presented by the custodial parent in this case simply because she was not required to offer any evidence in order to obtain the benefit of the presumption favoring relocation.

Accordingly we hold that, in light of the court's uncontested finding that Tisha thwarted her daughters' visitation with Charles, in light of evidence rebutting the presumption in favor of relocation, and in the absence of persuasive evidence that the move was in the children's best interests, the court correctly denied Tisha's petition to relocate.

Affirmed.

ROBBINS, ROAF, and CRABTREE, JJ., agree.

BIRD and BAKER, JJ., dissent.

SAM BIRD, Judge, dissenting. I respectfully dissent from the majority's position because I believe that the appellee, Charles Sill, failed to present sufficient evidence to rebut the presumption in favor of appellant's relocation under *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003). I would therefore reverse and remand.

Following a hearing in January 2005, the court found appellant Tisha Sill to be in contempt for not paying certain financial obligations imposed upon her by the divorce decree and for her alleged failure to comply with the court's standard child-visitation order. Those findings are not appealed. The court also denied appellant's petition to relocate herself and her children to Miami, Oklahoma, expressing its belief that her move to Miami was motivated primarily by her intention to further burden appellee in the exercise of his visitation rights and to alienate him from his children.

I agree with the appellant that the evidence in this case was insufficient to rebut her presumptive right to relocate under *Hollandsworth, supra*. I am disappointed that the trial court and the

majority have chosen to disregard the dictates of that decision. In the oral recitation of her findings following the hearing, the trial judge stated:[1]

> I know it is difficult and frankly I don't think it is best for the children to be in Miami. So I am denying the petition to relocate and I am denying the petition to change custody and [appellant] is going to find herself a way to get back to this area, back to Benton County, so [appellee] can enjoy the visits he had with his children as scheduled, so he can go to school and participate in their lunch time, or he can go to school for extracurricular activities. He has been robbed of that, and I see absolutely no good reason why [appellant] moved away from here except to impose that burden on him and attempt to alienate his children.

I first note that in *Hollandsworth, supra,* our supreme court pronounced "a presumption in favor of relocation for custodial parents with primary custody," holding that "the noncustodial parent should have the burden to rebut the relocation presumption" and that "the custodial parent no longer has the obligation to prove a real advantage to herself or himself and to the children in relocating." *Id.* at 485, 109 S.W.3d at 663. The trial judge's finding that there was "no good reason" why appellant moved away clearly ignores this holding.

Simply put, primary custodial parents are no longer required to come up with "good" reasons or any reasons why they desire to relocate themselves and their children. They are presumptively entitled to relocate, subject to the right of the non-custodial parent to rebut that presumption with proof that the move would be detrimental to the interests of the children.

Except to complain that his scheduled visitation privileges were inconvenienced by appellant's eighty-five-mile move, appellee put on no evidence that was inimical to appellant's presumptive right to relocate. There was no evidence presented that the move would be detrimental to the children. The trial judge opined that appellant's $12,000 annual income reduction showed that her move to Miami did not improve her financial situation, reasoning, therefore, that appellant must have "moved to Miami and changed

---

[1] The trial judge in the case at bar, the Honorable Xollie Duncan, is the same trial judge whose decision to deny a relocation petition was reversed by our supreme court in *Hollandsworth, supra.*

jobs for the sole purpose of making it difficult for [appellee] to have contact with his children."[2] However, there was no evidence that the children's lifestyle had been negatively affected by the reduced income and there was evidence that the cost of living in Miami was less than in Rogers. Furthermore, since *Hollandsworth* relieves appellant, as the custodial parent, of the obligation to prove a real advantage to herself and her children in relocating, she was not required to show that she would benefit financially from the move or, for that matter, that her financial situation would not be negatively impacted by the move.

The only reason expressed by the trial judge in her oral recitation of findings for the denial of appellant's petition to relocate was that appellant had "no good reason" for the move and that her sole motive was to deprive appellee of his right "to enjoy the visits he had with his children as scheduled, so he can go to school and participate in their lunch time, or he can go to school for extracurricular activities." Similarly, the court's written order stated that appellant's motive to relocate was "for the sole purpose of thwarting [appellee's] visitation with his minor children."

A custodial parent's presumptive right of relocation is hollow indeed if it is rebutted by mere evidence that the non-custodian cannot as conveniently eat lunch with his children at school or attend their soccer games and other extracurricular school activities. As our supreme court said in *Hollandsworth, supra,* "Divorce, without exception, transforms the relationship between divorced parents, as well as between the parents and their children," noting that "[w]ithin four years of a divorce, one-fourth of all custodial mothers will move to a new location, and one out of every five Americans change residences each year." *Id.* at 476, 109 S.W.3d at 657. It is difficult for me to imagine a relocation of any distance by a custodial parent that does not, to some degree, impair, inconvenience, or interfere with the visitation preferences or privileges of the non-custodial parent. If such impairment, inconvenience, or interference with visitation is a sufficient basis to deny the relocation, then our supreme court might as well overrule *Hollandsworth,* abolish the relocation presumption, and return to the days of *Staab v. Hurst,* 44 Ark. App. 128, 868 S.W.2d

---

[2] While expressing concern about appellant's $12,000 income reduction that accompanied her move to Miami, the trial court does not appear to have considered that appellant was employed under contract as a teacher with the Miami School District, which she would be required to breach, and that she would be returning to Arkansas without employment.

517 (1994), when it was the custodial parent's burden to prove that relocation would result in a "real advantage" to the custodial parent and the children.

In *Hollandsworth, supra,* our supreme court held that "relocation alone is not a material change of circumstances" that will sustain a denial of a custodial parent's presumptive right of relocation. *Id.* at 485, 109 S.W.3d at 663. In recognition of that holding, the trial judge in the present case, although finding that a material change of circumstances had arisen from appellant's interference with appellee's visitation rights, then found that a change of custody was not in the children's best interests, but nonetheless forced appellant to return to Arkansas with her children[3] so that appellee could enjoy visitation with his children "as scheduled." In its written order, the court even ordered appellant to appear at a hearing three and a half weeks later to report to the court her progress in returning to Arkansas.

The trial court expressed its doubts as to the credibility of appellant's testimony relating to her motives for moving to Miami, Oklahoma. However, as already noted, under *Hollandsworth, supra,* the custodial parent need not prove a real advantage to herself and the children in relocating, and the burden is on the non-custodial parent to rebut the relocation presumption with evidence that the relocation would be detrimental to the best interests of the children. When called as an adverse witness by appellee, appellant testified that she decided to move to Miami because that is where her family is from, that living near her extended family made her life easier, that she had obtained a teaching job there, and that her living expenses there were less. Appellee, whose burden it was to prove that the move was detrimental to the welfare of the children, did not offer any proof in rebuttal to appellant's reasons for moving. In fact, the evidence offered by appellee established that both appellant and appellee were originally from Miami, Oklahoma, that they had moved to Arkansas only five years earlier, and that their parents and other extended members of both families still lived in Miami. Notwithstanding the total absence of any proof to the contrary, the trial court announced that "from watching her testify and watching the demeanor of the parties and witnesses on the stand, I am of the belief that [appellant] moved to Miami and

---

[3] In the oral presentation of her findings, the trial court stated that "where I am having the biggest problem is trying to decide if I can force [appellant], because that is what it is going to take, to comply with the court's order without taking the kids out of the home."

changed jobs for the sole purpose of making it difficult for [appellee] to have contact with his children."

To begin with, I do not understand what is not to believe about the preference of a divorced woman with two young children to live near her family. But more importantly, appellant was not required to prove that any real advantage would accrue to her or her children in making the move. Furthermore, the issue is not whether appellant offered credible reasons for her wish to relocate, but whether appellee offered proof to rebut the presumption that she could relocate for no reason at all. In my opinion, he did not.

In *Hollandsworth*, the supreme court set forth five matters that the trial court should consider in making its relocation determination, matters that the trial court here, with exception of the first one (*i.e.*, the reasons for the relocation), completely ignored. As to the appellant's reasons for relocating, the trial court concluded, in the complete absence of any evidence, that appellant's "sole" motive for relocating was to thwart appellee's exercise of visitation. The trial judge set forth no analysis whatsoever of the second through fifth of the *Hollandsworth* matters.[4] Most significantly, although the judge expressed, as her only reason for denying relocation, that appellant was motivated solely by a desire to thwart appellee's visitation rights, she gave no consideration to the third matter (*i.e.*, the visitation and communication schedule of the non-custodial parent) or to the supreme court's instructive language in *Hollandsworth, supra*, that the "advantages of the move should not be sacrificed solely to maintain the 'same' visitation schedule where a reasonable alternative visitation schedule is available." *Id.* at 481, 109 S.W.3d at 661 (quoting *Cooper v. Cooper*, 491 A.2d 606 (N.J. 1984)). The court in *Hollandsworth, supra*, also noted that "maintenance of a reasonable visitation schedule by the non-custodial parent remains a critical concern, but in our mobile society, it may be possible to honor that schedule and still recognize the right of the custodial parent to move." *Id.* at 481–82, 109 S.W.3d at 661 (quoting *Holder v. Polanski*, 544 A.2d 852 (N.J. 1988)). Here, even though the parties would have lived less than one-hundred miles apart had relocation been allowed (instead of the thirty miles apart they lived in Arkansas), the trial judge made

---

[4] The five matters, which have become generally known in the case law as "the *Hollandsworth* factors" are recited in the majority opinion and, for brevity's sake, will not be repeated here.

no effort to fashion an alternative visitation schedule that might have accommodated the interests of both parties or at least diminished the inconvenience to appellee. Instead, the court ordered that appellee's visitation would be granted according to "the Court's Standard Visitation Schedule," which was attached as an exhibit to the order, refusing to even allow the parties to vary from the "standard" schedule by agreement.[5]

I do not agree that a trial court has fulfilled its obligation under *Hollandsworth* by summarily announcing, without supporting evidence, that a custodial parent's relocation was intended to thwart a non-custodial parent's visitation rights, but failing to give any consideration to fashioning an alternative visitation schedule that would have allowed reasonable visitation while still recognizing the right of the custodial parent to move.

The majority's affirmance of the trial court's decision appears to arise, first, from a misunderstanding of appellant's arguments on appeal, and secondly, from a misapplication of the supreme court's decision in *Hollandsworth*. For example, appellant does not argue, as the majority contends, "that she was denied the benefit of [the relocation] presumption because the trial court found that [appellee] rebutted the presumption." Rather, appellant argues in her brief, quite clearly I believe, that she "was denied the presumption provided to custodial parents in relocation cases" because "there was insufficient evidence presented by Mr. Sill to rebut this presumption." While purporting to recognize that, under *Hollandsworth*, the burden is on the non-custodial parent to rebut the custodial parent's presumptive right to relocate, and that the custodial parent is not required to prove that any real advantage will accrue to herself or himself and the children in relocating, the majority, under the guise of de novo review, makes findings that the trial court did not make and essentially concludes that the trial court should be affirmed because: (1) appellant did not prove that her financial situation would not be impacted by the relocation; (2) appellant did not prove that the relocation would make it easier to benefit from the financial and moral support of her family in Miami; (3) appellant did not prove that the relocation would afford her daughters an opportunity to become better acquainted with family members in Miami *because they were already well acquainted as*

---

[5] In her oral recitation of findings, the court stated that "the standard visitation is going to be pursuant to the schedule . . ., and I am not going to leave it up to these parties to agree to something different, because they won't."

*a result of frequent visits to Miami*; and (4) appellant did not prove that the Miami schools offered greater educational opportunities and extra-curricular programs than the Rogers schools. What the majority refuses to acknowledge is that appellee, who had the burden of proof, offered no evidence whatsoever that appellant's relocation would be detrimental to the children's interests, relying instead solely on his evidence that his visitation rights were going to be inconvenienced by appellant's relocation.

In *Hollandsworth, supra,* our supreme court boldly realigned Arkansas with the states that recognize that a custodial parent, who bears the burden and responsibility for the children, should have the same right of mobility as non-custodial parents so as to enable custodial parents to also seek a better life for herself or himself and the children. The trial judge, who, as noted, is the same trial judge who was reversed in *Hollandsworth,* has not applied *Hollandsworth* here; and, regrettably, this court's refusal to reverse the trial court only serves to dilute *Hollandsworth* and return Arkansas to the days of *Staab, supra,* when the custodial parent desiring to relocate was obligated to prove that a real advantage would accrue to him or her and to the children from the relocation. In *Hollandsworth,* the supreme court expressly overruled *Staab.*

Viewing all of the evidence in this case, I am left with a definite and firm conviction that the trial judge made a mistake in denying appellant's petition to relocate with her children to Oklahoma. For this reason, I would reverse the trial court's decision, and I am authorized to state that Judge Baker joins in this dissenting opinion.